[No. S052920. Aug. 14, 1997.]

DANNY GARCIA, Plaintiff and Appellant, v.
CHARLES McCUTCHEN et al., Defendants and Respondents.

470

COUNSEL

Tomas Nunez and Henry D. Nunez for Plaintiff and Appellant.

Steven Rood, Eisen & Johnston, Jay-Allen Eisen and Marian M. Johnston as Amici Curiae on behalf of Plaintiff and Appellant.

Borton, Petrini & Conron and Gary C. Harvey for Defendants and Respondents.

OPINION

CHIN, J.—In this case, we consider the scope of a trial court's power to dismiss an action for noncompliance with local court rules implementing the 1990 Trial Court Delay Reduction Act (Act) (Gov. Code, § 68600 et seq.). We conclude that, under the governing statutes, a court may not impose this sanction if noncompliance is the responsibility of counsel, not of the litigant. Therefore, we affirm the Court of Appeal judgment, which reversed the trial court's dismissal of plaintiff's action.

FACTS

In April 1993, plaintiff Danny Garcia filed a complaint in the Fresno County Superior Court seeking damages for injuries he received during an altercation at Henry's Cantina, a cocktail lounge in Clovis, California. The complaint alleged claims for personal injury, general negligence, premises liability, and intentional tort, and named, among other defendants, Fern and

David Avila, individually and doing business as Henry's Cantina (collectively the Avilas). On June 28, 1993, the clerk of the court served on Garcia's counsel, Tomas Nunez, a notice of failure to comply with former rule 5.4A of the Superior Court of Fresno County Rules,[1] which required a plaintiff to serve the complaint on all named defendants and file a proof of service within 60 days of filing the complaint. Former rule 5.4A was one of the rules that the Fresno County Superior Court promulgated "pursuant to Code of Civil Procedure [§]575.1" to implement the Act.[2] (Former rule 5.1.) The notice also cautioned: "IT IS THE PLAINTIFF'S RESPONSIBILITY TO TIMELY PROSECUTE GENERAL CIVIL ACTIONS FILED IN FRESNO COUNTY. SEE [former] RULE 5."

On November 1, 1993, the clerk served Nunez with a notice pursuant to former rule 5.6B ordering him to appear at a status hearing on January 19, 1994. Former rule 5.6B directed the trial court to order all parties to attend a status hearing if an at issue memorandum was not filed within 180 days after filing of the complaint. The notice ordered Nunez to comply with former rule 5.7, which required counsel for each represented party to file and serve at least five court days before the status hearing a sworn declaration addressing a number of matters, including counsel's explanation for failing to satisfy the requirements of former rules 5.4 (serving complaint and filing proof of service) and 5.6 (filing at issue memorandum). The notice also ordered Nunez to appear in person unless he was going to be out of the county on the hearing date and he arranged at least 14 days before that date to appear by telephone.

Nunez did not appear at the status hearing on January 19, 1994. Instead, that morning he informed the court he was out of the county in trial, but he did not arrange to appear by telephone. The Honorable Gary R. Kerkorian sanctioned Nunez $50 for failing to appear and $50 for failing to serve and file the required declaration. Judge Kerkorian continued the matter to April 19, 1994, "for hearing on the Court's sua sponte motion to dismiss the entire action." The court's minute order indicated that counsel's appearance would be unnecessary if an at issue memorandum was filed, or a dismissal or judgment was entered.

On January 27, 1994, Judge Kerkorian followed up his order by issuing a notice of motion to dismiss the action, citing in the caption former rule

---

[1]Except as otherwise indicated, all further rule references are to the Superior Court of Fresno County Rules. A revised set of local rules for Fresno County took effect January 1, 1997.

[2]Except as otherwise indicated, all further statutory references are to the Code of Civil Procedure.

5.10.[3] Former rule 5.10 provided: "In the event that any attorney, or any party represented by counsel or any party appearing in pro se fails to comply with any of the requirements of [former] Rule 5 or any order made pursuant to [former] Rule 5, the Court may, upon motion of a party or on its own motion: [¶] . . . [¶] B. Dismiss the action or proceeding or any part thereof . . . ." Consistent with the caption's reference to former rule 5.10, the notice cited as grounds for the motion "Plaintiff['s] . . . fail[ure] to comply with . . . [former] rule 5, and the Court's directives thereunder." The notice provided that all supporting or opposing papers should be filed at least five calendar days before the hearing. Although the notice was directed to "all parties and their attorneys," the clerk mailed it only to counsel.

At the hearing on April 19, Judge Kerkorian sanctioned Nunez $300 for not complying with the court's service and at issue memorandum requirements and $25 for late filing of a declaration explaining his noncompliance. Judge Kerkorian continued the hearing on the dismissal motion to June 21 before the Honorable Dwayne Keyes. He cautioned that, if the case was not at issue by June 21, counsel would "have to show Judge Keyes very good cause why he shouldn't dismiss it." Judge Kerkorian's minute order provided that counsel's appearance would be unnecessary if an at issue memorandum was filed, or a dismissal or judgment was entered.

In May, Nunez sought and obtained permission to serve summons on several defendants by publication. Also in May, several of the other defendants who had already been served, including the Avilas, filed demurrers to Garcia's second amended complaint. On June 17, the Honorable Gary S. Austin sustained the demurrer of one defendant without leave to amend. He sustained the demurrer of the Avilas only in part and granted Garcia leave to amend until July 20.

As scheduled, on June 21, four days after the demurrer hearing, a hearing on the motion to dismiss was held before Judge Keyes. Nunez did not appear at the hearing. Judge Keyes granted the motion and dismissed the case without prejudice. Although the dismissal was without prejudice, the statute of limitations would have barred claims alleged in a new complaint.

Accordingly, after learning of the dismissal, Nunez filed a motion for reconsideration on Garcia's behalf. In support of the motion, Nunez asserted that the dismissal was based on failure to serve the remaining defendants

---

[3]The caption also cited section 583.410 and California Rules of Court, rule 372, which address discretionary dismissal for delay in prosecuting an action that has been pending at least two years. Garcia's action did not satisfy this requirement, and the trial court ultimately did not dismiss it under these provisions.

with the second amended complaint by June 21. He explained that he had not served the remaining defendants because of the demurrers that had been pending before Judge Austin. The Avilas opposed the motion, arguing that the court's dismissal was not based on failure to serve the remaining defendants, but "on plaintiff's willful and repeated failure to file status conference declarations, repeated *failure* to appear at status hearings, and finally, failure to appear at the June 21, 1994, hearing on the court's motion to dismiss."

At the hearing on the reconsideration motion, Nunez asserted that he had not attended the June 21 hearing on the dismissal motion because he believed that Judge Austin's order partially sustaining the demurrer "had obviated [the dismissal] hearing, because he gave me an extension to file a third amended complaint for July 20." Nunez also discussed his efforts to serve the other defendants. Judge Keyes replied: "That does not concern me as much as your cavalier attitude of when you appear in court and when you do not appear in court." Judge Keyes then denied the motion for reconsideration. His order of dismissal states that he based the ruling on "the moving papers, the lack of opposition papers, and the absence of plaintiff's counsel . . . ."

The Court of Appeal reversed the trial court's ruling, concluding that section 575.2, subdivision (b) (section 575.2(b)), prohibits dismissal as a sanction where noncompliance with local court rules is the fault of counsel, not of the litigant. This section, the court explained, "makes clear the legislative intent that a party's cause of action should not be impaired or destroyed by his or her attorney's procedural mistakes." The court found nothing in the Act rendering section 575.2(b) inapplicable. On the contrary, it concluded that the relevant provision of the Act, Government Code section 68608, subdivision (b) (Government Code section 68608(b)), merely incorporates "the general authority granted to the courts by section 575.2, subdivision (a) to impose sanctions, including the sanction of dismissal. The limitation on that authority, as reflected in [section 575.2(b)], that parties not be punished for counsel's noncompliance with local rules, is not affected by any contrary expression of intent in [Government Code section 68608(b)]."

We then granted review to resolve an apparent conflict between the Court of Appeal's decision and the decision in *Intel Corp.* v. *USAIR, Inc.* (1991) 228 Cal.App.3d 1559 [279 Cal.Rptr. 569] (*Intel*). The court in *Intel*, construing the predecessor of Government Code section 68608(b), concluded that section 575.2(b) does not limit a court's power to dismiss an action as a sanction for counsel's noncompliance with local rules implementing statutory delay reduction programs (fast track rules). (*Intel, supra,* 228 Cal.App.3d at pp. 1563-1566.)

## DISCUSSION

In 1982, the Legislature gave courts express statutory power to adopt local rules "designed to expedite and facilitate the business of the court." (§ 575.1.) At the same time, it enacted section 575.2, subdivision (a), which permits a court's local rules to prescribe sanctions, including dismissal of an action, for noncompliance with those rules. Section 575.2(b), on which the Court of Appeal relied, provides: "It is the intent of the Legislature that if a failure to comply with these rules is the responsibility of counsel and not of the party, any penalty shall be imposed on counsel and shall not adversely affect the party's cause of action or defense thereto."

Courts have interpreted section 575.2(b) as "sharply limit[ing] penalties in instances of *attorney* negligence." (*State of California* ex rel. *Public Works Bd.* v. *Bragg* (1986) 183 Cal.App.3d 1018, 1025 [228 Cal.Rptr. 576] (*Bragg*), original italics.) In *Bragg*, the court stated that section 575.2(b) creates "an exception to the general rule that the negligence of an attorney is imputed to the client [citations], with the client's only recourse a malpractice action against the negligent attorney. [Citations.]" (*Bragg, supra*, at p. 1026.) Similarly, in *Moyal* v. *Lanphear* (1989) 208 Cal.App.3d 491, 502 [256 Cal.Rptr. 296] (*Moyal*), the court explained that, in section 575.2(b), "[t]he Legislature has made clear its intent a party's cause of action should not be impaired or destroyed by his or her attorney's procedural mistakes." In *Cooks* v. *Superior Court* (1990) 224 Cal.App.3d 723, 727 [274 Cal.Rptr. 113], the court construed section 575.2(b) "to proscribe any sanction against an innocent party for local rule violations of counsel and to proscribe sanctions against counsel that adversely affect the party's cause of action or defense thereto." These decisions also hold that a court must invoke section 575.2(b) on its own motion when necessary to protect an innocent party. (*Cooks, supra*, 224 Cal.App.3d at p. 727; *Moyal, supra*, 208 Cal.App.3d at p. 502; *Bragg, supra*, 183 Cal.App.3d at pp. 1028-1029; see also *In re Marriage of Colombo* (1987) 197 Cal.App.3d 572, 579-580 [242 Cal.Rptr. 100] [following *Bragg*].)

■ The Avilas do not challenge this judicial construction of section 575.2(b). Rather, they contend that a trial court's power under Government Code section 68608(b) to dismiss an action for violation of local fast track rules is not subject to the limits of section 575.2(b). Government Code section 68608(b) provides: "Judges shall have all the powers to impose sanctions authorized by law, including the power to dismiss actions or strike pleadings, if it appears that less severe sanctions would not be effective after taking into account the effect of previous sanctions or previous lack of compliance in the case. Judges are encouraged to impose sanctions to

achieve the purposes of this [Act]." The Avilas view this section as creating a dismissal power that is both independent of and greater than the court's power under section 575.2(b). We disagree.

The Avilas' construction of these provisions violates several rules of statutory interpretation. ■ As in any case involving statutory interpretation, "[o]ur first step is to scrutinize the actual words of the statute, giving them a plain and commonsense meaning. [Citations.]" (*People* v. *Valladoli* (1996) 13 Cal.4th 590, 597 [54 Cal.Rptr.2d 695, 54 Cal.Rptr.2d 695, 918 P.2d 999].) ■ By its terms, Government Code section 68608(b) gives trial courts only those sanctioning powers "authorized by law." Under its plain and commonsense meaning, the phrase, "authorized by law," incorporates only those sanctioning powers that the law otherwise establishes, including those set forth in section 575.2. It does not express a legislative intent to establish an independent sanctioning power. Because section 575.2(b) directs that "any penalty shall be imposed on counsel and shall not adversely affect the party's cause of action" when noncompliance "is the responsibility of counsel and not of the party," dismissal without consideration of whether counsel or the client is at fault is not a sanction "authorized by law." (Gov. Code, § 68608(b); cf. *People* ex rel. *Deukmejian* v. *County of Mendocino* (1984) 36 Cal.3d 476, 486 [204 Cal.Rptr. 897, 683 P.2d 1150] [in conditioning permit on "compliance with the 'law,'" the Legislature "intended to require compliance with other state statutes"]; *Bateman* v. *Colgan* (1896) 111 Cal. 580, 585 [44 P. 238] [requirement that board proceed "'in the manner and method authorized by law'" refers "to the manner and method for making improvements provided in the law governing said board"].)

■ The Avilas' interpretation also violates the rule of statutory interpretation that requires us, if possible, to give effect and significance to every word and phrase of a statute. (*Steinberg* v. *Amplica, Inc.* (1986) 42 Cal.3d 1198, 1205 [233 Cal.Rptr. 249, 729 P.2d 683].) "When two statutes touch upon a common subject," we must construe them "in reference to each other, so as to 'harmonize the two in such a way that no part of either becomes surplusage.' [Citations.]" (*DeVita* v. *County of Napa* (1995) 9 Cal.4th 763, 778-779 [38 Cal.Rptr.2d 699, 889 P.2d 1019].) We must presume that the Legislature intended "every word, phrase and provision . . . in a statute . . . to have meaning and to perform a useful function." (*Clements* v. *T. R. Bechtel Co.* (1954) 43 Cal.2d 227, 233 [273 P.2d 5].) ■ Contrary to these principles, the Avilas' view that Government Code section 68608(b) establishes an independent sanctioning power reads the phrase "authorized by law" out of the statute.

Finally, the Avilas' interpretation runs counter to the rule regarding repeal by implication. ■ "[A]ll presumptions are against a repeal by implication. [Citations.]" (*Flores* v. *Workmen's Comp. Appeals Bd.* (1974) 11 Cal.3d

171, 176 [113 Cal.Rptr. 217, 520 P.2d 1033].) Absent an express declaration of legislative intent, we will find an implied repeal "only when there is no rational basis for harmonizing the two potentially conflicting statutes [citation], and the statutes are 'irreconcilable, clearly repugnant, and so inconsistent that the two cannot have concurrent operation.'" (*In re White* (1969) 1 Cal.3d 207, 212 [81 Cal.Rptr. 780, 460 P.2d 980].) As we have explained, there is a rational basis for harmonizing section 575.2(b) and Government Code section 68608(b). By reading Government Code section 68608(b) as incorporating the limits of section 575.2(b), we "maintain the integrity of both statutes . . . ." (*Penziner* v. *West American Finance Co.* (1937) 10 Cal.2d 160, 176 [74 P.2d 252].) In contrast, the Avilas, by reading Government Code section 68608(b) as authorizing dismissal for counsel's noncompliance with local rules, would repeal section 575.2(b) with respect to all fast track rules.

To support their interpretation, the Avilas invoke the principle that "specific statutory provisions relating to a particular subject will govern, as against a general provision, in matters concerning that subject." Citing *Intel*, they assert that, because Government Code section 68608(b) is the more specific statute regarding delay reduction, it "controls over" section 575.2(b). In *Intel*, the court considered section 575.2(b)'s application to fast track cases in light of Government Code section 68608(b)'s predecessor, Government Code former section 68609, subdivision (d). That section provided in relevant part: "In order to enforce the requirements of an exemplary delay reduction program and orders issued in cases assigned to it, the judges of the program shall have all the powers to impose sanctions authorized by law, including the power to dismiss actions or strike pleadings, if it appears that less severe sanctions would not be effective after taking into account the effect of previous sanctions or previous lack of compliance in the case." (Stats. 1988, ch. 1200, § 1, pp. 4008-4009.) The court held that, notwithstanding section 575.2(b), dismissal for noncompliance with local delay reduction rules was proper, stating: "While [section 575.2(b)] is concerned with penalties for violation of any local rules, the Government Code provision addresses imposition of sanctions for violation of local delay reduction rules. The Government Code provision is clearly more narrowly circumscribed and specific than [section 575.2(b)], and is therefore controlling." (*Intel*, *supra*, 228 Cal.App.3d at p. 1565.) The Avilas urge that the same analysis governs interpretation of Government Code section 68608(b).

The Avilas have incorrectly applied this principle of statutory construction. Initially, we question the assertion that Government Code section 68608(b) is the more specific provision. Although that section applies specifically to delay reduction programs, it speaks only generally about a

court's power to impose sanctions "authorized by law" in connection with these programs. It does *not* expressly address the power of a court to impose sanctions for noncompliance with local rules. The Legislature has expressly addressed that subject in section 575.2 and has expressly limited the court's power in subdivision (b) of that section. Thus, it is arguable which statute is the more specific and which the more general. (Cf. *People* v. *Tanner* (1979) 24 Cal.3d 514, 521 [156 Cal.Rptr. 450, 596 P.2d 328].)

In any event, "[t]he principle that a specific statute prevails over a general one applies only when the two sections cannot be reconciled. [Citations.]" (*People* v. *Wheeler* (1992) 4 Cal.4th 284, 293 [14 Cal.Rptr.2d 418, 841 P.2d 938].) If we can reasonably harmonize "[t]wo statutes dealing with the same subject," then we must give "concurrent effect" to both, "even though one is specific and the other general. [Citations.]" (*People* v. *Price* (1991) 1 Cal.4th 324, 385 [3 Cal.Rptr.2d 106, 821 P.2d 610].) As we have explained, Government Code section 68608(b) and section 575.2(b) are not irreconcilable. By granting trial courts sanctioning powers "authorized by law," Government Code section 68608(b) expressly incorporates the terms of section 575.2, including the limitations of subdivision (b). More generally, the Act mandates that courts, in carrying out their responsibility to eliminate delay, must act "consistent with statute . . . ." (Gov. Code, § 68607.) Where, as here, "the [assertedly] specific statute expressly requires compliance with other laws and when there is no direct conflict between the various laws," the principle on which the Avilas rely "is entitled to little weight." (*People* ex rel. *Deukmejian* v. *County of Mendocino, supra,* 36 Cal.3d at p. 488.) Accordingly, we reject the Avilas' claim that, because Government Code section 68608(b) specifically addresses fast track matters, it "controls over" section 575.2(b).[4] (See *International Assn. of Fire Fighters Union* v. *City of Pleasanton* (1976) 56 Cal.App.3d 959, 975-976 [129 Cal.Rptr. 68].)

The Avilas additionally insist that, as a matter of public policy, the power to dismiss actions when counsel violate fast track rules is necessary to further the public's interest in reducing litigation delay. They assert: "[A]ny delay in the resolution of litigation severely undermines the public confidence in the fairness and utility of the judiciary as a public institution since delay in the process reduces the chance that justice will be done and imposes severe hardships on the litigants." To support their assertion, they *partially* quote the following legislative findings and conclusions that were part of the original Trial Court Delay Reduction Act of 1986 (1986 Act): "(a) The

---

[4]We disapprove *Intel* and dictum in *Laguna Auto Body* v. *Farmers Ins. Exchange* (1991) 231 Cal.App.3d 481, 490 [282 Cal.Rptr. 530], to the extent they are inconsistent with our conclusion.

expeditious and timely resolution of [legal] actions is an integral and necessary function of the judicial branch . . . . [¶] (b) Delay in the resolution of . . . litigation is not in the best interests of the state and the public. The people . . . expect and deserve prompt justice and the speedy resolution of disputes. Delay in the resolution of litigation may reflect a failure of justice and subjects the judiciary to a loss of confidence by the public in both its fairness and utility as a public institution. Delay reduces the chance that justice will in fact be done, and often imposes severe emotional and financial hardship on litigants. [¶] (c) Cases filed in California's trial courts should be resolved as expeditiously as possible . . . ."[5] (Gov. Code, former § 68601.)

For two reasons, we reject the Avilas' claim. First, the general policy underlying legislation "cannot supplant the intent of the Legislature as expressed in a particular statute. [Citation.]" (*Fuentes* v. *Workers' Comp. Appeals Bd.* (1976) 16 Cal.3d 1, 8 [128 Cal.Rptr. 673, 547 P.2d 449].) As we have shown, Government Code section 68608(b) expresses a legislative intent to grant trial courts only those sanctioning powers "authorized by law." Government Code section 68607 expresses a legislative intent to require courts, in carrying out their responsibility to eliminate delay, to act "consistent with statute . . . ." Section 575.2(b) expresses a legislative intent that sanctions not affect a party's cause of action if a failure to comply with local rules "is the responsibility of counsel and not of the party . . . ." The Avilas err in relying on the general policy of delay reduction underlying the Act to the exclusion of the language of these statutes.

Second, the Avilas are incorrect in suggesting that either the 1986 Act or the current Act directs that the goal of delay reduction take precedence over all other considerations. On the contrary, in the part of Government Code former section 68601, subdivision (c), that the Avilas have failed to quote, the Legislature recognized "the strong public policy that litigation be disposed of on the merits wherever possible." (See *Hocharian* v. *Superior Court* (1981) 28 Cal.3d 714, 724 [170 Cal.Rptr. 790, 621 P.2d 829].) That section provided *in full*: "Cases filed in California's trial courts should be resolved as expeditiously as possible, *consistent with the obligation of the courts to*

[5]The Legislature repealed the 1986 Act, including Government Code former section 68601, in 1990 when it enacted the current version of the Act. (Stats. 1990, ch. 1232, § 2, p. 5140.) The Avilas also rely heavily on the amended version of another repealed provision of the 1986 Act, Government Code former section 68612. That section permitted a court's delay reduction rules to be "inconsistent with the California Rules of Court," to "impose procedural requirements in addition to those authorized by statute," and to "shorten any time specified by statute for performing an act." (Stats. 1988, ch. 1200, § 3, p. 4009.) Because the current Act contains no similar authorization, the repealed statute and the cases construing it are no longer relevant. (See *La Seigneurie U.S. Holdings, Inc.* v. *Superior Court* (1994) 29 Cal.App.4th 1500, 1503 [35 Cal.Rptr.2d 175]; *Wagner* v. *Superior Court* (1993) 12 Cal.App.4th 1314, 1318-1319 [16 Cal.Rptr.2d 534].)

*give full and careful consideration to the issues presented, and consistent with the right of parties to adequately prepare and present their cases to the courts.*" (Gov. Code, former § 68601, subd. (c), italics added.) Thus, in establishing delay reduction programs, the Legislature recognized *competing* public policy considerations and "attempt[ed] to balance the need for expeditious processing of civil matters with the rights of individual litigants." (*Moyal, supra*, 208 Cal.App.3d at p. 500.) Unlike the Avilas, we find no evidence that the Legislature intended "the policy of expeditious processing of civil cases [to] override, in all situations, the trial court's obligation to hear cases on the merits. [Citations.]"[6] (*Wantuch* v. *Davis* (1995) 32 Cal.App.4th 786, 795 [39 Cal.Rptr.2d 47].)

Finally, we find unpersuasive the Avilas' assertion that an expanded dismissal power regarding fast track rules is necessary to promote calendar control. Courts have numerous other methods for maintaining control of their calendars. Under section 1209, subdivision (a)5, "[d]isobedience of any lawful . . . order . . . of the court" constitutes contempt. (See *In re Young* (1995) 9 Cal.4th 1052, 1053 [40 Cal.Rptr.2d 114, 892 P.2d 148].) For each separate act of contempt, the court may impose monetary sanctions or imprisonment. (§§ 1218, subd. (a), 1219.)[7] Applying section 1209, courts have treated "an attorney's failure to appear in court at a time he was personally ordered to appear, without valid excuse" as a punishable contempt. (*In re Baroldi* (1987) 189 Cal.App.3d 101, 106 [234 Cal.Rptr. 286].) Under Penal Code section 166, subdivision (a)(4), "[w]illful disobedience of any . . . order lawfully issued by any court" is a form of contempt that is criminally punishable as a misdemeanor by jail sentence of up to six months and/or fine of up to $1,000. (See Pen. Code, § 19.) Under section 128.5, subdivision (a), courts may "order a party, the party's attorney, or both to pay any reasonable expenses, including attorney's fees, incurred by another party as a result of bad-faith actions or tactics that are frivolous or solely

---

[6]In analogous contexts, the Legislature has also recognized the public interest in disposition of cases on the merits. (See, e.g., § 583.130 ["Except as otherwise provided by statute or by rule of court adopted pursuant to statute, . . . the policy favoring trial or other disposition of an action on the merits [is] generally to be preferred over the policy that requires dismissal for failure to proceed with reasonable diligence in the prosecution of an action in construing the provisions of this chapter."].)

[7]The court may fine the contemner up to $1,000 and, if the contemner is subject to the disobeyed order "as a party to the action," may order the contemner to pay to the party initiating the contempt proceeding the reasonable attorney fees and costs incurred in that proceeding. (§ 1218, subd. (a).) The court may also imprison the contemner for up to five days (§ 1218, subd. (a)) and, if "the contempt consists of the omission to perform an act which is yet in the power of the [contemner] to perform," may order the contemner "imprisoned until he or she has performed it . . . ." (§ 1219, subd. (a).)

intended to cause unnecessary delay."[8] Under section 177.5, courts may "impose reasonable money sanctions, not to exceed fifteen hundred dollars ($1,500) . . . for any violation of a lawful court order by a person, done without good cause or substantial justification." Thus, application of section 575.2(b)'s limits on the dismissal power to violations of fast track rules will not leave courts without power to control their calendars.[9]

In any event, the Avilas' interpretation of Government Code section 68608(b) might result in a proliferation of malpractice suits against counsel that would hinder, rather than promote, calendar control. This possibility was one of the concerns the Senate Committee on the Judiciary cited in recommending that the Legislature adopt section 575.2(b). The committee explained: "While the client would likely have a malpractice cause of action against a lawyer whose misconduct resulted in dismissal or default, that remedy would be counter productive, since it would result in even more complicated litigation, further clogging the courts." (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 3784 (1981-1982 Reg. Sess.) as amended Aug. 5, 1982, pp. 3-4.)

As our discussion demonstrates, granting a trial court power to dismiss an action where counsel alone is responsible for noncompliance with local rules would be a significant change in the law. Nothing in either the statutory language or the legislative history of the Act reflects a legislative intent to override section 575.2(b)'s limits on a court's sanctioning powers or to

[8]Section 128.5 currently applies only to actions, like Garcia's, filed before December 31, 1994. (§ 128.5, subd. (b)(1).) As to actions filed after that date, the Legislature has suspended operation of section 128.5 until January 1, 1999, substituting in its place on a trial basis section 128.7, which was modeled on rule 11 of the Federal Rules of Civil Procedure. (*Crowley* v. *Katleman* (1994) 8 Cal.4th 666, 690, fn. 13 [34 Cal.Rptr.2d 386, 881 P.2d 1083].) Section 128.7 sets forth certification requirements for pleadings and authorizes courts to impose sanctions for violations of those requirements upon "the attorneys, law firms, or parties that have violated" the certification requirements "or are responsible for the violation." (§ 128.7, subd. (c).)

[9]Adoption of section 177.5 directly influenced the Legislature's decision to limit judicial power under section 575.2 to impose sanctions for noncompliance with local rules. The Senate Committee on the Judiciary cited the availability of monetary sanctions under section 177.5 as a justification for proposing the addition of subdivision (b) to section 575.2. The committee explained: "[Last] week this committee passed [Assembly Bill No. 3573,] . . . a bill that would allow courts to fine lawyers up to $1,500 for failing to comply with court orders. It would appear, therefore, that authorizing courts to indirectly penalize lawyers by dismissing causes of action under this bill would be superfluous should [Assembly Bill No.] 3573 become law." (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 3784 (1981-1982 Reg. Sess.) as amended Aug. 5, 1982, p. 4.) At the request of amicus curiae Pacific Software Services, Inc., we take judicial notice of the committee's report. We also take judicial notice of the legislative reports the Avilas have submitted, and of legislative reports relating to other relevant statutes. (Evid. Code, §§ 452, 459; see also *People* v. *Cruz* (1996) 13 Cal.4th 764, 773, 780, fn. 9 [55 Cal.Rptr.2d 117, 919 P.2d 731].)

give courts expanded dismissal powers with respect to fast track rules. Instead, the words the Legislature chose reflect a contrary intent, i.e., to give courts only those sanctioning powers "authorized by law." (Gov. Code, § 68608(b).) "We are not persuaded the Legislature would have silently, or at best obscurely, decided so important . . . a public policy matter and created a significant departure from the existing law." (*In re Christian S.* (1994) 7 Cal.4th 768, 782 [30 Cal.Rptr.2d 33, 872 P.2d 574].) Accordingly, we affirm the judgment of the Court of Appeal.[10]

## DISPOSITION

The judgment of the Court of Appeal is affirmed.

George, C. J., Mosk, J., Kennard, J., Baxter, J., Werdegar, J., and Brown, J., concurred.

---

[10]In their reply brief, the Avilas for the first time assert, with little argument in support, that the phrase "authorized by law" in Government Code section 68608(b) includes a "trial court's inherent authority to dismiss cases for disobedience of its orders." Obvious reasons of fairness militate against our considering this poorly developed and untimely argument. (*People* v. *Rodrigues* (1994) 8 Cal.4th 1060, 1116, fn. 20 [36 Cal.Rptr.2d 235, 885 P.2d 1]; *Varjabedian* v. *City of Madera* (1977) 20 Cal.3d 285, 295 [142 Cal.Rptr. 429, 572 P.2d 43].) This is especially true here, given the statutes we have discussed that specify the courts' sanctioning options. (See *Tide Water Assoc. Oil Co.* v. *Superior Court* (1955) 43 Cal.2d 815, 825 [279 P.2d 35] [court's inherent power may be reasonably limited by statute].)