115 Cal.Rptr.2d 335 (2002)
95 Cal.App.4th 168
In re SE. T. et al., Persons Coming Under the Juvenile Court Law.
Sacramento County Department of Health and Human Services, Plaintiff and Respondent,
v.
L. T., Defendant and Appellant.
No. C037875.
Court of Appeal, Third District.
January 11, 2002.
As Modified January 31, 2002.
Review Denied March 20, 2002.[*]
*336 Allen, Polgar, Proietti & Fagalde and Michael A. Fagalde, Merced, for Defendant and Appellant.
Robert A. Ryan, Jr., County Counsel, Loni Montgomery, Supervising Deputy County Counsel, for Plaintiff and Respondent.
DAVIS, J.
L.T. (appellant), the mother of Se., Sh., and D.T. (the minors), appeals from the *337 orders of the juvenile court adjudging the minors dependent children.[1] She contends that the notice provisions of the Indian Child Welfare Act (ICWA)[2] were not complied with, that the court failed to determine whether the other provisions of the ICWA applied, and that there was insufficient evidence presented to support jurisdiction. We disagree with each of these contentions and shall affirm the orders. In so doing we hold that when a vague Indian tribal designation such as Cherokee is the only information the Sacramento County Department of Health and Human Services (Department) and the juvenile court have a minor's Indian ancestry, the notice provisions of the ICWA are complied with by sending notice to the Bureau of Indian Affairs (BIA). Once the notice provisions of the ICWA were complied with, neither the Department nor the court had reason to know that the minors were Indian children as defined by the ICWA, and the court had no basis for applying the ICWA's other provisions. Finally, we hold that the statements of the minors, evidence of physical injuries to them, and accounts of appellant's inability to control her anger constitute substantial evidence supporting jurisdiction.

Facts and Procedural History
In August 2000, dependency petitions were filed concerning three and one-half-year-old twins Se. T. (Se.) and Sh. T. (Sh.) and five-year-old D.T. (D.) based on allegations that appellant burned Se. with a cigarette lighter, burned Sh. on his nose on two occasions, and slapped him across the face. According to the petitions, four marks were observed on Se.'s back, one of which was red and blistering.
The social worker's jurisdictional report states that Se.'s burns were discovered when he asked his daycare teacher for an ice pack for his back. Se. told the daycare teacher, and subsequently the social worker, that appellant had burned him on his back with a lighter. D. confirmed that appellant had burned Se.'s back with a lighter. Sh. and D. reported that appellant had told them not to talk to anyone about the incident.
Se. was examined two weeks later. The examination revealed non-specific injuries that could not be ruled out as lighter burns. During the examination, Se. stated he was burned with a green lighter.
The daycare teacher reported that, approximately four months earlier, Sh. had a scab on his nose and, when asked how he hurt himself, he stated appellant burned him because he said a bad word. On another occasion, appellant slapped Sh. after she was told by daycare staff that Sh. had been acting out in class. According to the detention report, appellant slapped Sh. "with full force." Sh.'s teacher reported appellant also "began verbally attacking [Sh. and] cursing at him...."
Appellant told the social worker Sh. had bumped into her cigarette with his arm. She maintained she had never burned the minors with a lighter. Appellant explained the marks on Se.'s back by stating the boys were "very overly active." She denied slapping Sh. across the face, but acknowledged she raised her voice and "pop[ped] him a little bit on the mouth."
The minors' father resided in the home of a pastor of the Gospel Christian Fellowship. The pastor told the social worker that appellant had arrived unannounced at *338 his residence on two occasions and created disturbances requiring him to call the police. The minors' father reported that, on these occasions, appellant was "irate and out of control."
In February 2001, at the contested jurisdictional hearing, the social worker testified Se. had told her he had gotten in trouble and then got a burn on his back. She stated that Se. was an active child and that the foster mother had reported that Se. and Sh. were very aggressive with each other. The social worker testified Sh. had told his teacher that appellant had burned his nose because he was being a bad boy. She testified further that, on another occasion when Sh. had a sore on his nose, he told his teacher appellant had burned him again.
Appellant testified both Se. and Sh. had "come into contact with lit cigarettes" in her home, but she denied ever burning them. Appellant testified there had been eight injuries involving the minors at school, including the injury to Sh.'s nose.
The pediatric nurse practitioner who examined Se. testified his injuries could have been caused by a burn. She was not absolutely sure they were burns; it was possible they were accidental injuries. The nurse confirmed Se. had told her and, later, the doctor, that appellant had burned him with a lighter. She testified that the marks on Se.'s back were next to the spine, not on top of the spine where accidental injuries more commonly occur.
The juvenile court sustained the petitions under section 300, subdivisions (a), (b), (i), and (j), and ordered reunification services.

Discussion

I
Appellant contends that the notice provisions of the ICWA were not complied with and that the court failed to determine whether the other provisions of the ICWA applied. We disagree.
According to the detention report, appellant claimed to be of Cherokee descent. At the detention hearing, the juvenile court directed that notice be provided pursuant to the ICWA. The jurisdictional report indicated that notice had been sent to the BIA by certified mail, return receipt requested.
In 1978, Congress passed the ICWA, which is designed to promote the stability and security of Indian tribes and families by establishing minimum standards for removal of Indian children from their families.[3] Among the procedural safeguards included in the ICWA is the provision for notice, which states in part: "In any involuntary proceeding in a State court, where the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention. // the identity or location of the parent or Indian custodian and the tribe cannot be determined, such notice shall be given to the Secretary [of the Interior] in like manner, who shall have fifteen days after receipt to provide the requisite notice to the parent or Indian custodian and the tribe...."[4] An "Indian child" is defined by *339 the ICWA as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian Tribe."[5] "Indian tribe" is defined by the ICWA as "any Indian tribe, band, nation, or other organized group or community of Indians recognized as eligible for the services provided to Indians by the Secretary [of the Interior] because of their status as Indians, including any Alaska Native village. ..."[6]
Appellant contends notice was deficient under the ICWA because "[t]he Department failed to provide notice to the Cherokee Tribe." In her reply brief she belatedly contends that the Department should have also sent notice to the "Blackfoot" tribe based on a notation in the court's minutes from the detention hearing that appellant "has been identified as being of Native American Heritage (Blackfoot) ..." Except for this one unsupported notation, all other references in the record state that the appellant's Indian heritage was "Cherokee." The single notation in the court's minutes appears to be a typographical error and in any event, appellant cannot raise this new contention for the first time in her reply brief.[7]
Appellant reported she is of Cherokee descent but provided no information as to the name or location of the Cherokee tribe from which her ancestors may have descended. Since there are several federally registered tribes that are associated with the term "Cherokee," appellant's vague reference to her ancestry did not present the court with a basis for determining "the identity or location of the ... tribe" from which the minors are descended.[8] Under such circumstances, the ICWA does not require the Department or the court to cull from the Federal Register the names and locations of all tribes that may be associated with a vague term such as Cherokee and then give each notice of the proceedings. Rather, the statute provides, under these circumstances, that "such notice shall be given to the Secretary [of the Interior] ...,"[9] which is satisfied by notice to the BIA.[10]
The Federal Register is a lengthy and confusing list containing the names of hundreds of tribes that meet the requirements for an "Indian tribe" as defined by the ICWA.[11] Neither the Department nor the juvenile court has the expertise to determine which tribes listed on the Federal Register are affiliated with a general Indian designation, such as "Cherokee." The BIA has many years of experience in determining who is an Indian for a variety of purposes.[12] It is therefore not surprising that the ICWA delegates to the BIA the task of determining which tribe or tribes to notify when the information available to the Department and the juvenile court does not identify a federally registered *340 Indian tribe.[13] Here, the Department complied with the ICWA's directive by giving notice to the BIA.[14] We presume that the BIA carried out its official duty by notifying any potential tribe of the pending proceedings and the right to intervene.[15]
Although neither party cites this court's recent decision in In re Marinna J., the case bears some mention.[16] In Marinna J., notice was not sent to either the BIA or any tribe, despite information from the minor's father that the minor was of "Cherokee Indian ancestry."[17]Marinna J. held that notice in compliance with the Act was required and that the issue had not been waived by failure to raise it in the juvenile court.[18] Although the question of whether notice to the BIA would have been sufficient was not before the court, the disposition in Marinna J. directed that, upon remand, notice was to be provided to "the three [federally recognized] Cherokee tribes." [19] Furthermore, dictum in the case suggests that notice to the BIA alone might not constitute compliance with the Act when there is an indication that a parent has "Cherokee" ancestry.[20]
As the issue is squarely presented here, we find that when a vague Indian tribal designation such as Cherokee is the only information the Department and the juvenile court have of a minor's Indian ancestry, the notice provisions of the ICWA are complied with by sending notice to the BIA. We disagree with dictum in Marinna J. suggesting otherwise.
Appellant's assertion that the court was required to determine whether the other provisions of the ICWA applied is also mistaken. Other than its notice requirements, the provisions of the ICWA apply only if the minor is an "Indian child."[21] As stated above, an "Indian child" is defined as an unmarried person under 18 years of age who is a member of an Indian tribe or is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe.[22] Although California Rules of Court, rule 1439(e), requires the juvenile court to "proceed as if the child is an Indian child" when "the court has reason to know the child may be an Indian child," the rule distinguishes between minors who may be Indian children and those who may be of Indian ancestry, requiring only notice to the BIA and "further inquiry regarding the possible Indian status of the child" in the latter case.
Here, appellant did not claim that the minors were members of an Indian tribe or that she was a member of a tribe and the minors were eligible for membership. The information provided by appellant indicated that she was of Cherokee descent, *341 suggesting only that the minors were of Indian ancestry. No other information before the court suggested that the minors were Indian children. Absent a determination from the tribe or the BIA or some additional information, the juvenile court had no reason to know the minors were Indian children, and no basis for applying the other provisions of the Act to the proceedings.[23]

II
Lastly, appellant contends there was insufficient evidence to support the juvenile court's jurisdictional findings. We disagree.
Section 300, subdivision (a) provides, in part, that a child comes within the juvenile court's jurisdiction if "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm inflicted nonaccidentally upon the child by the child's parent...." Subdivision (b) of section 300, as relevant here, provides for jurisdiction if serious physical harm or a substantial risk of such harm results from the failure of the parent to adequately supervise or protect the child. Section 300, subdivision (i) applies when a parent subjects a child to an act of cruelty. Section 300, subdivision (j) provides for jurisdiction over a minor whose sibling has been abused or neglected when the minor is at risk of being abused or neglected.
Our review of the sufficiency of the evidence is limited to whether the judgment is supported by any substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the trier of fact.[24] Viewing the evidence in the light most favorable to the judgment, we find that substantial evidence supports jurisdiction in this case. All three minors consistently reported that appellant burned Se. on his back with a lighter. Se. told the social worker he got in trouble prior to being burned, indicating the burns were not accidental. Appellant told the minors not to tell anyone about what had happened. Se. had marks on his back that could be consistent with lighter burns.
Similarly, Sh. was consistent in reporting that appellant had burned his nose. He told his teacher that this occurred because he said a "bad word," again indicating a nonaccidental injury. The teacher observed a scab on the minor's nose. A pastor, the minors' father, and daycare staff had all witnessed appellant's inability to control her anger.
Citing no legal authority, appellant argues "[t]he only conclusive evidence the twins had suffered burns at the hands of [appellant] were [sic] the statements of the children." Contrary to appellant's suggestion, any one of the minors' statements would have been sufficient to support jurisdiction.[25] Here, there was far more. The minors' statements corroborated each other. Further corroboration was provided by medical evidence consistent with the minors' reports. There was evidence that appellant had been unable to control her anger. This included evidence *342 that she had slapped Sh. "with full force" and "verbally attacked" him. Other than appellant's statements, there was no evidence contradicting the account provided by the minors. Furthermore, no explanation was offered as to why these very young children would fabricate accusations against their mother.
All of this evidence supports the juvenile court's conclusion that the minors had suffered, or were at substantial risk of suffering, serious physical harm non-accidentally by appellant and as a result of appellant's failure to protect them. Nor do we have any difficulty finding that appellant's acts of intentionally burning her three and one-half-year-old twins constituted cruelty under section 300, subdivision (i).
Appellant contends the juvenile court erred by assuming jurisdiction over D. under subdivision (i) of section 300 because there was no evidence of any act of cruelty against D. Appellant is correct that jurisdiction under subdivision (i) requires evidence that the parent committed an act of cruelty against the minor, not merely that the minor is at risk of such action. However, here neither reversal of the judgment nor remand is necessary because the juvenile court's assumption of jurisdiction over D. under section 300, subdivisions (a), (b), and (j) was supported by substantial evidence.[26]

Disposition
The orders of the juvenile court are affirmed.
We concur: SCOTLAND, P.J., and NICHOLSON, J.
NOTES
[*] In denying review, the Supreme Court ordered that the opinion be not officially published. (See California Rules of CourtRules 976 and 977).
[1] Welfare and Institutions Code sections 360, subdivision (d), 395. Undesignated section references are to the Welfare and Institutions Code.
[2] Title 25 United States Code section 1901 et seq.
[3] Title 25 United States Code section 1902; Mississippi Choctaw v. Holyfield (1989) 490 U.S. 30, 32-37, 109 S.Ct. 1597, 104 L.Ed.2d 29; In re Crystal K. (1990) 226 Cal.App.3d 655, 661, 276 Cal.Rptr. 619; California Rules of Court, rule 1439.
[4] Title 25 United States Code section 1912(a), italics added; see California Rules of Court, rule 1439(f).
[5] Title 25 United States Code section 1903(4).
[6] Title 25 United States Code section 1903(8).
[7] See Garcia v. McCutchen (1997) 16 Cal.4th 469, 482, footnote 10, 66 Cal.Rptr.2d 319, 940 P.2d 906; Neighbours v. Buzz Oates Enterprises (1990) 217 Cal.App.3d 325, 335, footnote 8, 265 Cal.Rptr. 788.
[8] Title 25 United States Code section 1912(a).
[9] Title 25 United States Code section 1912(a).
[10] Title 25 United States Code section la (delegation to the BIA of powers and duties of the Secretary of the Interior regarding laws governing Indian affairs).
[11] Title 25 United States Code section 1903(8).
[12] See Guidelines for State Courts; Indian Child Custody Proceedings, 44 Fed.Reg. 67584 (Nov. 26, 1979), B.l, Commentary.
[13] Title 25 United States Code section 1912(a).
[14] See Title 25 United States Code section la (delegation to the BIA of powers and duties of the Secretary of the Interior regarding laws governing Indian affairs).
[15] Evidence Code section 664.
[16] In re Marinna J. (2001) 90 Cal.App.4th 731, 109 Cal.Rptr.2d 267.
[17] In re Marinna J., supra, 90 Cal.App.4th at page 736, 109 Cal.Rptr.2d 267.
[18] In re Marinna J., supra, 90 Cal.App.4th at page 739, 109 Cal.Rptr.2d 267.
[19] In re Marinna J., supra, 90 Cal.App.4th at page 740, 109 Cal.Rptr.2d 267.
[20] In re Marinna J., supra, 90 Cal.App.4th at page 736-737, 740, footnote 4, 109 Cal. Rptr.2d 267.
[21] California Rules of Court, rule 1439(g)(5).
[22] Title 25 United States Code section 1903(4); California Rules of Court, rule 1439(a)(1).
[23] See In Levi U. (2000) 78 Cal.App.4th 191, 199, 92 Cal.Rptr.2d 648.
[24] In re Christina T. (1986) 184 Cal.App.3d 630, 639, 229 Cal.Rptr. 247.
[25] See In re Lucero L. (2000) 22 Cal.4th 1227, 1247-1248, 96 Cal.Rptr.2d 56, 998 P.2d 1019 (uncorroborated out-of-court statements of legally incompetent minor sufficient for jurisdiction if sufficient indicia of reliability); In re Tracy Z. (1987) 195 Cal.App.3d 107, 113, 240 Cal.Rptr. 445 (any substantial evidence is sufficient, even incompetent or otherwise inadmissible evidence admitted without objection); Evidence Code section 411 (direct evidence of one witness is sufficient for proof of any fact).
[26] In re Jonathan B. (1992) 5 Cal.App.4th 873, 875, 7 Cal.Rptr.2d 277.