Filed 5/11/23  P. v. McDonald CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>   Plaintiff and Respondent,<br><br>   v.<br><br>DUSTIN SEAN ROSS MCDONALD,<br><br>   Defendant and Appellant. | G061328<br><br>(Super. Ct. No. 14CF2681)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Kimberly Menninger, Judge.  Affirmed.

Aaron J. Schechter, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Robin Urbanski and Yvette M. Martinez, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

A jury convicted defendant Dustin Sean Ross McDonald of one count of murder and two counts of attempted murder, and it also found true three firearm enhancements. At sentencing, the trial court refused to dismiss the enhancements. It sentenced McDonald to 114 years to life, including 25 years to life for each firearm enhancement, and imposed various fines and fees. On appeal, McDonald argues the court made two errors. First, it erred by failing to strike the enhancements. He asserts that under Penal Code section 1385, subdivision (c)(2)(C),[1] the court was required to dismiss the firearm enhancements because their imposition resulted in a sentence of over 20 years. Second, McDonald claims the court erroneously placed the burden on him to show inability to pay the fines and fees assessed.

We disagree with both contentions. First, several courts have rejected McDonald's interpretation of section 1385, subdivision (c)(2)(C). We agree with these courts' analysis. Second, appellate courts have uniformly ruled that defendants have the initial burden of proving their inability to pay imposed fines and fees, and McDonald has not persuaded us to depart from these cases. Thus, we affirm the order.


I

FACTS AND PROCEDURAL HISTORY

A. Conviction

McDonald was convicted of one count of premeditated murder (§ 187, subd. (a)), and two counts of attempted murder (§§ 664, 187, subd. (a)). The jury also found true three firearm enhancements (§ 12022.53, subd. (d)). Based on these findings, the trial court sentenced McDonald to 114 years to life, comprised of 25 years to life for the first degree murder conviction, seven years to life for each of the two attempted murder convictions, and 25 years to life for each of the three firearm enhancements

---

[1] All further undesignated statutory references are to the Penal Code.

(§ 12022.53, subd. (d)).  The trial court also imposed various fines and fees, including a $40 court security assessment, a $30 criminal conviction assessment, and a $300 restitution fine.  The facts underlying these findings are taken from our prior unpublished opinion, *People v. McDonald* (Jan. 10, 2019, G054148) [nonpub. opn.].

"McDonald arranged to buy drugs from Aaron Chavez at a designated intersection.  When Chavez arrived at the Santa Ana location in a car, McDonald approached on foot and fired 10 shots into the car with a handgun.  McDonald killed Chavez and grievously injured two other people." (*People v. McDonald*, *supra*, G054148.)

"A few months before the shooting, McDonald contacted Chavez and asked him about buying drugs.  Ashlee C. was present, but she is not sure if a drug sale actually occurred.  Ashlee and Chavez had been dating for about two years; they were sellers and users of methamphetamine and heroin.  The couple often 'ripped off' their customers by diluting the drugs with substances like salt (for methamphetamine) or brown sugar (for heroin), or they would simply sell the substances as drugs.  Chavez did not have his own cell phone; Chavez shared Ashlee's phone.

"About a month before the shooting, McDonald texted Ashlee's phone, seeking to purchase methamphetamine.  Ashlee drove to a Santa Ana parking lot to meet up with McDonald; Chavez was not with her that day.  McDonald got into the passenger seat of the car and Ashlee sold him what was purported to be methamphetamine.  But McDonald later complained that the drug 'was bad stuff.'  McDonald talked to Chavez, who 'apologized and said that he would make it right.'  But as far as Ashlee was aware, Chavez never 'made it right' with McDonald." (*People v. McDonald*, *supra*, G054148.)

"A little after 11:00 p.m., on August 12, 2014, Ashlee and Chavez drove to a Santa Ana restaurant, where they picked up Ashlee's former coworker, Ingrid G. Ashlee was driving, Chavez was in the front passenger seat, and Ingrid was in the

3

backseat.  Chavez was using Ashlee's phone, arranging to sell heroin (actually, mostly brown sugar) to McDonald.

"Ashlee drove to a nearby intersection, chosen by McDonald, where she parked on a street in front of a house.  Ashlee selected that spot because it was better lit.  The three smoked methamphetamine in the car while they waited for McDonald (although a surveillance video later revealed that about 18 minutes earlier, McDonald had actually parked his vehicle nearby).  McDonald texted Chavez and told him that they were parked too far away, so Ashlee moved the car and parked across the street from where McDonald was parked, although she never shifted the transmission into 'park.'  According to Ashlee, it was 'really dark' outside.

"As McDonald walked to the drivers' side of the car, Ashlee pointed him towards the passenger side where Chavez was seated with the bag of purported heroin.  Chavez rolled down his window as McDonald approached the passenger side.  But before any words were spoken, and as McDonald stood about three or four feet away from the car, he pulled a gun out of his waistband, pointed it at Chavez and shot him in the face.  McDonald then shot Ashlee in the face; she curled up in her seat and her foot came off the brake pedal.  Ashlee heard about 10 shots in quick succession.  Ashlee had been shot in both legs, both arms, her hand, chest, and face.

"Ingrid had been looking down at her phone in the backseat when she heard shots being fired and heard Ashlee screaming, '"he's dead."'  Ingrid felt a burning pain in her shoulder.  Ingrid told Ashlee to 'Go.  Go.  Go[,]' as the car started moving slowly forward.  Ingrid threw a syringe out of the car before calling 911.  Ingrid had been shot through her armpit, on her side, and in her lower back." (*People v. McDonald*, *supra*, G054148.)

4

*B. First Appeal and Subsequent Remand*

In McDonald's first appeal, he challenged his convictions and requested that we remand his case for resentencing due to several legislative changes. (*People v. McDonald*, *supra*, G054148.) This Court affirmed his convictions but remanded the case for resentencing as to firearm enhancements. (*Ibid*.) We explained, "[t]he version of section 12022.53 in effect at the time of McDonald's sentencing did not permit the trial court to exercise its discretion to strike or dismiss the firearm enhancements. But since then, the statute has been amended. Section 12202.53, subdivision (h), now reads: 'The court may, in the interest of justice pursuant to Section 1385 and at the time of sentencing, strike or dismiss an enhancement otherwise required to be imposed by this section. The authority provided by this subdivision applies to any resentencing that may occur pursuant to any other law.'" (*Ibid*.)

Following the resentencing hearing in April 2022, the trial court declined to dismiss any of the firearm enhancements under section 1385. McDonald appeals the resentencing order, arguing the court erred by (1) failing to strike his three firearm enhancements, and (2) giving him the burden of proving his inability to pay the fees and fines assessed. We disagree with both contentions.

II

DISCUSSION

*A. The Firearm Enhancements*

McDonald argues the trial court was required to dismiss his firearm enhancements under section 1385, subdivision (c)(2)(C), because they resulted in his sentence being over 20 years. We disagree with McDonald's reading of this statute.

"Prior to January 1, 2022, section 1385 provided trial courts with discretion to dismiss sentencing enhancements in the interest of justice. The statute did not provide direction as to how courts should exercise that discretion. In October 2021 the

5

Legislature passed and the Governor signed Senate Bill No. 81 (2021-2022 Reg. Sess.) (Senate Bill 81) (Stats. 2021, ch. 721, § 1), which, effective January 1, 2022, amended section 1385 to provide guidance regarding the exercise of discretion in dismissing sentencing enhancements." (*People v. Anderson* (2023) 88 Cal.App.5th 233, 238 (*Anderson*).)

Section 1385, subdivision (c), now states, "the court shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute." (§ 1385, subd. (c)(1).) It explains, "[i]n exercising its discretion under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the [nine] mitigating circumstances in subparagraphs (A) to (I) are present. Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety." (§ 1385, subd. (c)(2).)

The mitigating circumstance at issue is found in section 1385, subdivision (c)(2)(C), which states, "[t]he application of an enhancement could result in a sentence of over 20 years. In this instance, the enhancement *shall* be dismissed."[2] (§ 1385, subd. (c)(2)(C), italics added.) Another similar mitigating circumstance states, "[m]ultiple enhancements are alleged in a single case. In this instance, all enhancements beyond a single enhancement *shall* be dismissed." (§ 1385, subd. (c)(2)(B), italics added.) These are the only two mitigating circumstances in the statute that contain the phrase "shall be dismissed." (§ 1385, subd. (c)(2)(A)-(I).)

---

[2] Initially, this mitigating circumstance was contained in section 1385, subdivision (c)(3)(C). (§ 1385, former subd. (c)(3)(C), Stats. 2021, ch. 721, § 1, eff. Jan. 1, 2022.) The Legislature renumbered this subdivision of section 1385, and the changes became effective on June 30, 2022. (Stats. 2022, ch. 58, § 15.)

McDonald argues we are required to dismiss all his enhancements under the plain language of section 1385, subdivision (c)(2)(C). The use of the word "shall," he contends, means a court must dismiss an enhancement whenever it results in a sentence of over 20 years. After McDonald filed his appeal, however, several cases rejected his reading of this subdivision. (*People v. Mendoza* (2023) 88 Cal.App.5th 287, 290-291 (*Mendoza*); *Anderson*, *supra*, 88 Cal.App.5th at pp. 240-241; *People v. Lipscomb* (2022) 87 Cal.App.5th 9, 17-18 (*Lipscomb*).) Likewise, *People v. Walker* (2022) 86 Cal.App.5th 386 (*Walker*), rejected a similar interpretation of the mitigating circumstance concerning multiple enhancements (§ 1385, subd. (c)(2)(B)).

These cases have reasoned that the "shall be dismissed" language in these two mitigating circumstances (§ 1385, subds. (c)(2)(B) & (c)(2)(C)) must be read within the context of the entire statute. (*Anderson*, *supra*, 88 Cal.App.5th at p. 239; *Mendoza*, *supra*, 88 Cal.App.5th at p. 295; *Lipscomb*, *supra*, 87 Cal.App.5th at p. 18; *Walker*, *supra*, 86 Cal.App.5th at p. 397.) "Section 1385(c)(2) provides that in determining whether to dismiss an enhancement 'under this subdivision,' the court must consider nine listed mitigating circumstances if proven by the defendant [citation], 'unless the court finds that dismissal of the enhancement would endanger public safety.' [Citation.] That provision means that if the court finds that dismissal of an enhancement 'would endanger public safety,' then the court need not consider the listed mitigating circumstances. [Citation.] The 'shall be dismissed' language in section 1385(c)(2)(C), like the language of all of the listed mitigating circumstances, applies only if the court does *not* find that dismissal of the enhancement would endanger public safety. That interpretation gives meaning to the language in section 1385(c)(2) requiring the court to consider whether dismissal 'would endanger public safety,' and it consequently avoids rendering that language surplusage." (*Mendoza*, *supra*, 88 Cal.App.5th at p. 296.)

Further, appellate courts have found Senate Bill 81's legislative history supports the above interpretation. For example, "the September 8, 2021 Senate Floor

7

Analysis suggests that the trial court retains discretion to impose the enhancement where failing to do so would endanger public safety." (*Lipscomb*, *supra*, 87 Cal.App.5th at p. 18.) It states, "'[b]uilding on the California Rules of Court that guide judges in certain sentencing decisions, [Senate Bill 81] aims to provide clear guidance on how and when judges may dismiss sentencing enhancements and other allegations that would lengthen a defendant's sentence. By clarifying the parameters a judge must follow, [Senate Bill 81] codifies a recommendation developed with the input of the judges who serve on the Committee on the Revision of the Penal Code for the purpose of improving fairness in sentencing *while retaining a judge's authority to apply an enhancement to protect public safety*.'" (*Id*. at p. 19.)

Finally, McDonald's suggested "interpretation would result in the implied repeal of various statutory enhancements. For example, if section 1385(c)(2)(C) required a court to dismiss any enhancement in which application 'could result in a sentence of over 20 years' [citation], then courts would be required to dismiss firearm enhancements under subdivisions (c) and (d) of section 12022.53 because the enhancements respectively mandate sentences of 20 and 25 years [citations]. Similarly, courts would be required to dismiss gang enhancement allegations found true under subdivision (b)(4) of section 186.22 because that provision mandates imposition of indeterminate sentences. [Citation.] We presume that the Legislature did not intend to repeal all of those enhancement statutes by implication." (*Mendoza*, *supra*, 88 Cal.App.5th at pp. 296-297; *Lipscomb*, *supra*, 87 Cal.App.5th at pp. 20-21 [same]; see *Garcia v. McCutchen* (1997) 16 Cal.4th 469, 476-477 ["'[A]ll presumptions are against a repeal by implication'"].)

We agree with *Mendoza*, *Anderson*, *Lipscomb*, and *Walker* to the extent they have rejected McDonald's reading of section 1385, subdivision (c)(2)(C). Since these cases were decided after briefing in this matter had concluded, we requested supplemental briefing from the parties. In his supplemental brief, McDonald doubled down on his original argument. He asserted all four cases had misinterpreted the "shall

8

be dismissed" language in subdivisions (c)(2)(B) and (c)(2)(C) of section 1385. The plain language of these subdivisions, he maintained, requires courts to dismiss any enhancement resulting in a sentence of over 20 years or all enhancements beyond a single enhancement. He did not assert any alternative error if we rejected his position, nor did he attempt to distinguish these other cases. For example, he did not argue that the trial court failed to make a finding that dismissal of the firearm enhancements would endanger public safety. Nor did he argue that absent such a finding a court must dismiss an enhancement under section 1385, subdivision (c)(2)(C). We will not make these arguments on McDonald's behalf. (See *People v. Abarca* (2016) 2 Cal.App.5th 475, 480.)

## B. The Fines and Fees

McDonald also argues the court erred by placing the burden on him to prove his inability to pay the imposed fines and fees.[3] We are unpersuaded by his arguments.

Under *People v. Dueñas* (2019) 30 Cal.App.5th 1157, 1164 (*Dueñas*), "due process of law requires the trial court to conduct an ability to pay hearing and ascertain a defendant's present ability to pay before it imposes court facilities and court operations assessments." McDonald asserts *Dueñas* also held the prosecution has the burden of proving a defendant's inability to pay. He cites a portion of the case stating, "we hold that although the trial court is required by Penal Code section 1202.4 to impose a restitution fine, the court must stay the execution of the fine until and unless the People demonstrate that the defendant has the ability to pay the fine." (*Id*. at p. 1172.)

However, as McDonald admits, all post-*Dueñas* cases have placed the initial burden of proving inability to pay on the defendant, not the prosecution. Indeed,

---

[3] This issue is currently being reviewed by our Supreme Court. (*People v. Kopp* (Nov. 13, 2019, S257844) __Cal.App.5th__, review granted.)

9

the same division that decided *Dueñas* later rejected McDonald's reading of the case in *People v. Castellano* (2019) 33 Cal.App.5th 485 (*Castellano*). *Castellano* explains, "[i]n *Dueñas* the defendant challenged at the sentencing hearing the fees and fines imposed, asserting she was unable to pay them. [Citation.] She requested an ability-to-pay hearing and presented evidence—which the court credited—that she lacked the ability to pay the fines and fees it imposed. [Citation.] Our holding in *Dueñas* that the fees and assessments could not constitutionally be assessed and that execution of the restitution fine had to be stayed was based on the trial court's uncontested finding that Dueñas was unable to pay the amounts imposed. Here, in contrast, [the defendant] did not request an ability-to-pay hearing at his pre-*Dueñas* sentencing; thus, no evidence exists in the record from which to infer any findings in this regard.

"Consistent with *Dueñas*, *a defendant must in the first instance contest in the trial court his or her ability to pay the fines, fees and assessments to be imposed and at a hearing present evidence of his or her inability to pay* the amounts contemplated by the trial court. . . . The trial court then must consider all relevant factors in determining whether the defendant is able to pay the fines, fees and assessments to be imposed. . . . If the trial court determines a defendant is unable to pay, the fees and assessments cannot be imposed; and execution of any restitution fine imposed must be stayed until such time as the People can show that the defendant's ability to pay has been restored." (*Castellano*, *supra*, 33 Cal.App.5th at p. 490, fn. omitted, italics added.)

As *Castellano* observed, placing the burden on the defendant to show inability to pay was "already standard in other contexts in which a litigant seeks relief or assistance based on his or her financial condition. A litigant seeking fee waivers, for instance, must complete an application for an initial fee waiver with information supporting his or her claim to be exempt from filing fees on the basis of his or her financial condition . . . . Similarly, when a defendant requests . . . to be represented by the public defender because he or she cannot afford to retain counsel, the trial court may

10

require the defendant to file a financial statement to assist the court in making the final determination whether the defendant is financially able to employ counsel and qualifies for the services of the public defender."[4] (*Castellano*, *supra*, 33 Cal.App.5th at pp. 490-491.)

In short, McDonald has offered no authority for the proposition that the trial court erred by requiring him to prove his inability to pay the fees and fines at issue. The one case he cites, *Dueñas*, is limited to its facts. It did not establish a general rule that the prosecution bears the initial burden of proving a defendant's inability to pay. (*Castellano*, *supra*, 33 Cal.App.5th at p. 490.) Nor has McDonald provided any compelling reason to depart from all the cases that have rejected his argument. As recognized by *Castellano*, a defendant already has the burden to show inability to pay in a variety of related contexts. (*Id.* at pp. 490-491.) Further, from a practical standpoint, defendants are better situated to show an inability to pay fines and fees. Nearly all the information showing a defendant's financial condition will be more accessible to the defendant than the prosecution. If a defendant proves he or she is unable to pay, then the prosecution could present contrary evidence, such as the defendant's ability to earn wages during incarceration. (See *People v. Aviles* (2019) 39 Cal.App.5th 1055, 1076 [ability to pay includes the prison wages and money earned after release from custody].)

---

[4] Justice Zelon, who wrote *Dueñas*, concurred in *Castellano*. The same division again stated the defendant has the burden of proving inability to pay in *People v. Belloso* (2019) 42 Cal.App.5th 647, 662.

11

### III

### DISPOSITION

The trial court's order is affirmed.


                                        MOORE, ACTING P. J.

WE CONCUR:


GOETHALS, J.


MOTOIKE, J.