Filed 6/30/25  Vehling v. Regents of the U. of Cal. CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| MOLLIE VEHLING, | B331965 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 21STCP02031) |
| v. | |
| REGENTS OF THE UNIVERSITY OF CALIFORNIA, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mary H. Strobel (Ret.), Judge.  Dismissed.

Hathaway Parker, Mark M. Hathaway, and Jenna E. Parker for Plaintiff and Appellant.

Quarles & Brady, Sandra L. McDonough, and Isabella Sobalvarro for Defendant and Respondent.

Plaintiff and appellant Mollie Vehling (Vehling) was terminated from her employment as the director of the University of California Los Angeles's (UCLA's) spirit squad. She argues she is entitled to a "name-clearing hearing" to contest only one of multiple grounds UCLA relied on to terminate her: as she puts it, UCLA's "decision that [she] is responsible for violation of [UCLA's Sexual Harassment and Sexual Violence Policy (the Policy)] and the finding that she sexually harassed UCLA Spirit Squad members when they attended the 'Absinthe' show at Caesar's Palace in Las Vegas with major UCLA donor Alan Robbins, while [she] was in San Diego, California." We consider whether Vehling presents a justiciable issue notwithstanding the trial court's finding, in a written ruling, that no substantial evidence supports UCLA's finding that she violated the Policy.

## I

The parties are familiar with the facts, and our recitation can therefore be brief. We focus on the procedural history of the case and, in particular, the issues—as framed by Vehling—that the trial court was asked to resolve.

## A

In 2018, members of UCLA's spirit squad travelled to Las Vegas, Nevada in connection with a UCLA basketball game on Thanksgiving Day. Vehling did not travel with the squad. Robbins, the UCLA donor, offered to pay for squad members to attend a show in Las Vegas and sent a list of show options to Vehling, explaining that the show "Absinthe" would be his first choice. Vehling agreed that "Absinthe looks amazing" and offered squad members in Las Vegas the opportunity to attend. They

agreed, but were subjected to insulting remarks from the show's emcee and were uncomfortable with the sexually charged aspects of the show. Vehling was informed and recommended the squad members leave the show early.

Separate from the "Absinthe" experience itself, UCLA discovered misconduct by Vehling. She had contravened spirit squad rules by permitting a student to join who did not meet the eligibility requirements and provided an unauthorized payment to the same student in violation of financial aid rules. Vehling had also disregarded a prior instruction from a superior not to permit any contact between donor Robbins and the spirit squad.

B

After the Absinthe affair, UCLA instituted disciplinary proceedings against Vehling. She was alleged to have violated the Policy by arranging for spirit squad members to attend the Absinthe show with Robbins. She was also alleged to have violated her supervisor's direction not to allow contact between Robbins and the squad and to have violated squad participation and financial aid rules. All these allegations were sustained in the UCLA disciplinary proceedings and Vehling's employment was terminated as a result. Vehling administratively challenged her termination, including in a six-day evidentiary hearing, but the termination decision was upheld.

C

Vehling thereafter pursued administrative mandamus relief in court. Her writ petition contested only UCLA's finding that she violated the Policy by "encourag[ing] members of the UCLA Spirit Squad to attend a burlesque show in Las Vegas with

3

a donor, Alan Robbins." There was no mention in her petition of the other misconduct relied upon by UCLA (violation of squad participation rules and the directive not to permit contact between Robbins and the spirit squad) to terminate her.

UCLA, through defendant and respondent Regents of the University of California, opposed Vehling's administrative mandamus petition. UCLA argued Vehling's conduct in connection with the Absinthe affair was sufficient to constitute a violation of the Policy and justify her termination. But UCLA further argued that "Vehling's argument about whether her conduct rose to a[ Policy] violation is irrelevant, as non-[Policy] violations can be terminable offenses." In that regard, UCLA highlighted the squad participation violations and the disregard of a supervisor's directive that it relied on in terminating her— grounds that Vehling's writ petition did not challenge. UCLA also contended that arranging for the squad's attendance at the Absinthe show was misconduct even if it did not rise to the level of a violation of the Policy.

In reply, Vehling reiterated she sought "review of the decision by the UCLA Title IX Office, Title IX investigator/adjudicator Adriana Ovalle-Stevenson, and The Regents of the University of California . . . that . . . Vehling is responsible for violation of the [Policy] and the sexual harassment of several UCLA Sprit Squad members when they attended the 'Absinthe' show at Caesar's Palace in Las Vegas . . . ." Vehling acknowledged UCLA had argued that finding was irrelevant in light of the other misconduct that also justified her determination, but she maintained "the decision cost . . . Vehling her reputation and has impeded her employment at any other educational institution and continues to have

4

harmful effects to this day." Notwithstanding her focus on challenging UCLA's determination she had violated the policy, Vehling's reply also argued the squad participation/financial aid rules violations and insubordination that UCLA also relied on to terminate her were not supported by the record.

The trial court held an initial hearing on the petition in October 2022 and attempted to understand the scope of the relief Vehling was seeking. The court explained that UCLA was arguing "in support of upholding the termination decision under [Code of Civil Procedure section] 1094.5 that the hearing examiner made certain conclusions that actions of Vehling violated polices about—best practices is not the right term, but performance to standards, et cetera, regardless of whether they also constituted a violation of the sexual harassment policy. [¶] So that's why it's important for me to understand if the petitioner is actually challenging the termination decision. [¶] . . . [¶] Because I thought based on your reply that what you're saying . . . was [Vehling] is only challenging the decision of the investigator/adjudicator Ovalle-Stevenson [who found a violation of the Policy] and not the termination decision. And I was wondering if that was under some theory of reputational harm unrelated to her termination." Counsel for Vehling stated she was challenging the termination decision and explained "the termination letter states the basis for it."

After continuing the hearing to permit lodging of the administrative record partially under seal, the parties were again before the court in February 2023 to decide Vehling's petition for administrative mandamus. The court had posted a tentative ruling expressly concluding no substantial evidence supported UCLA's finding that Vehling violated the Policy but her

5

termination should still be upheld because the findings of other misconduct were adequately supported by the record and justified UCLA's decision to terminate her.

Vehling stated at the outset that she "clearly . . . agrees with the—the finding by the court that substantial evidence does not support the . . . determination by UCLA that [she] violated the . . . Policy, nor does substantial evidence support after the lengthy hearing the decision by the hearing officer that [she] violated the . . . Policy and committed sexual harassment." But Vehling argued the entire termination decision should be set aside because, contrary to the court's tentative ruling, insufficient evidence supported the other instances of misconduct relied on by UCLA to terminate her. Unpersuaded, the court adhered to its tentative ruling and adopted it as the final ruling of the court.

The court's final ruling, issued in a court minute order and memorialized in connection with a later duly entered judgment, expressly finds no substantial evidence supports UCLA's determination that Vehling violated the Policy: "[S]ubstantial evidence does not support the Hearing Officer's finding that [Vehling] violated the [Policy]. The Hearing Officer did not identify any conduct of [Vehling] which constituted 'unwelcome sexual advances, unwelcome requests for sexual favors, and other unwelcome verbal, nonverbal or physical conduct of a sexual nature' nor is there evidence in the record to support that finding. The Hearing Officer did not find that [Vehling's] conduct violated the [Policy] under an aiding and abetting theory—nor could he have considering [UCLA] found no evidence Robbins engaged in sexual harassment of the Spirit Squad." But the trial court concluded defendant's petition should still be denied because

6

there were other grounds, independent of a Policy violation, justifying Vehling's termination: "[U]nder [Code of Civil Procedure] section 1094.5, the court reviews the entire administrative decision, and [Vehling] is only entitled to relief if a prejudicial abuse of discretion is shown. [Citation.] [¶] The Hearing Officer expressly concluded that [Vehling] was subject to termination . . . even if her 'role in the "Absinthe" Show incident was not violative of the . . . Policy.' [Citation.] [Vehling] fails to directly address that finding, as framed by the Hearing Officer, in her writ briefs. Since the administrative decision was not contingent upon a finding of a violation of the . . . Policy, [Vehling's] arguments about the . . . Policy cannot establish a prejudicial abuse of discretion in the decision. . . . [T]he court concludes that the Hearing Officer's other findings are supported by substantial evidence."

## II

Vehling's briefs in this court largely track the position she took below.[1] She acknowledges and obviously agrees with the trial court's finding that she did not violate the Policy. She states she does not challenge the trial court's finding that sufficient evidence supports UCLA's finding that she engaged in other misconduct (i.e., misconduct other than a violation of the Policy),

---

[1]    Defendant and respondent's request for judicial notice is denied because the material sought to be noticed is immaterial to our disposition of this appeal. (*People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 422, fn. 2.)

nor does she seek reversal of UCLA's termination decision.[2] Instead, she argues she is entitled to a name-clearing hearing and that we should reverse so, effectively, the trial court can redraft its minute order to find only that she did not violate the Policy—without also finding that her termination stands because she engaged in misconduct.

As framed, Vehling's appeal is not justiciable because she is not aggrieved. (See generally Code Civ. Proc., § 902 ["Any party aggrieved may appeal in the cases prescribed in this title"]; *County of Alameda v. Carleson* (1971) 5 Cal.3d 730, 737; *Six4Three, LLC v. Facebook, Inc.* (2020) 49 Cal.App.5th 109, 115 ["For purposes of section 902, a party is aggrieved if an order 'injuriously affect[s]' its rights or interests"].) Vehling claims to want a judicial determination that clears her from having been found to have committed sexual harassment and a violation of the Policy, but she already has it: the trial court's ruling, which is final insofar as it finds insufficient evidence she violated the Policy (because UCLA has taken no appeal from the court's order). Because Vehling does not otherwise contest her

---

[2]	Although she states she "does not seek to overturn the termination decision," "does not challenge the finding of 'misconduct,'" and does not challenge the decision of [the hearing officer] upholding the termination decision, her reply brief curiously includes a three-page discussion disputing the evidence of misconduct. Coherence concerns aside, this discussion—coming only in reply—does not warrant consideration. (See, e.g., *People v. Tully* (2012) 54 Cal.4th 952, 1075; *Garcia v. McCutchen* (1997) 16 Cal.4th 469, 482, fn. 10.)

termination, she is not aggrieved by the trial court's order and we shall dismiss her appeal.[3]

## DISPOSITION

The appeal is dismissed. Defendant and respondent is awarded costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

BAKER, Acting P. J.

I concur:

KIM (D.), J.

---

[3]     Even if the appeal were properly before us for resolution as framed, the sole argument Vehling advances would be waived because it was not raised below—indeed, she argued the opposite, i.e., that she was challenging her termination and the trial court should resolve that challenge.

9

Vehling v. Regents of Univ. of Calif.

B331965


MOOR, J., Dissenting.


I respectfully dissent. When a public employee is terminated based on charges that might seriously damage the employee's standing in the community or impose a stigma that impairs the freedom to pursue other employment, the employee is entitled to a "name-clearing hearing." (*Katzberg v. Regents of the University of California* (2002) 29 Cal.4th 300, 304–305.) This due process right entitles the employee to a name-clearing hearing only, not reinstatement. *(Kreutzer v. City and County of San Francisco* (2008) 166 Cal.App.4th 306, 320, fn. 9.)

In my view of the record, appellant Mollie Vehling consistently sought to set aside her employer's finding that she violated the sexual violence and sexual harassment policy (the sexual harassment policy) because of adverse consequences from the stigmatizing finding. Vehling was required to exhaust her administrative remedies and file a writ petition for review of the termination decision containing the stigmatizing finding. She challenged the finding itself, regardless of the impact on the termination decision, in addition to challenging the termination decision that incorporated the finding. Therefore, the issue of a name-clearing hearing has not been forfeited or waived.

The trial court correctly ruled that Vehling did not violate the sexual harassment policy, but then denied Vehling's petition

in its entirety.[1]  This was error.  The appropriate disposition and remedy in the trial court would have been:  (1) to expressly *grant* the portion of the petition challenging the finding that Vehling violated the sexual harassment policy and deny the remainder of the petition challenging the termination decision, and (2) to direct the Regents to remove the stigmatizing information from Vehling's personnel file.  (See *Cox v. Roskelley* (9th Cir. 2004) 359 F.3d 1105, 1112 [maintaining stigmatizing information in public employee's personnel file triggered right to name-clearing hearing].)


MOOR, J.

---

[1] To the extent Vehling was challenging her termination on grounds other than a violation of the sexual harassment policy, the trial court correctly denied her petition, as she concedes on appeal.

2