Filed 8/16/23  Asoau v. Tu'ufuli CA1/5

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| LEFANOGA ASOAU, et al., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> MAVERICK TU'UFULI, et al., <br><br> Defendants and Appellants. | A163904 <br><br> (San Mateo County <br> Super. Ct. No. 21-CIV-00281) |

In this litigation over control of the Samoan Congregational Church of Jesus Christ in Daly City (the Church), the trial court issued a preliminary injunction removing defendants Maverick and Audrey Tu'ufuli from Church leadership pending trial.  The Tu'ufulis principally contend the court erred in finding the Church is a subordinate member of the Congregational Church of Jesus in Samoa and Abroad (the Mother Church); that it failed to properly evaluate the balance of harms and the plaintiffs' likelihood of prevailing on the merits; and that the preliminary injunction improperly altered the status quo.  These contentions, to the extent not forfeited, are meritless.  We affirm.

## BACKGROUND

### A.

For reasons we will discuss, much of this dispute revolves around whether the Church is a congregational church, as the

1

Tu'ufulis contend, or a hierarchical church, as the trial court found.

A congregational church is one that is strictly independent of any higher religious organization. (*Concord Christian Center v. Open Bible Standard Churches* (2005) 132 Cal.App.4th 1396, 1409 (*Concord Christian*).) In the case of a hierarchical church, on the other hand, individual local churches are organized under a higher ecclesiastical body, are subordinate to the larger religious organization, and are bound by its orders and judgments. (*Ibid.; Singh v. Singh* (2004) 114 Cal.App.4th 1264, 1276 (*Singh*), quoting *Watson v. Jones* (1871) 80 U.S. 679, 726-727.)

When a hierarchical church is involved, courts defer to the higher church tribunal's decisions involving ecclesiastical doctrine, practice, or polity (including the removal of clergy) but may adjudicate disputes that are amenable to resolution under neutral principles of law without resolving any underlying ecclesiastical controversy. (*Singh, supra,* 114 Cal.App.4th at pp. 1276-1282; *Concord Christian, supra*, 132 Cal.App.4th at pp. 1411-1413 [deferring to church tribunal in litigation over revocation of ministerial credentials].)

To the extent the relevant facts are undisputed, we independently review the trial court's interpretation of articles of incorporation, bylaws, or other governing church documents and its determination to defer to the decisions of the highest authority within a hierarchical church. (*Kim v. The True Church Members of Holy Hill Community Church* (2015) 236 Cal.App.4th 1435, 1445; *Concord Christian, supra,* 132 Cal.App.4th at pp. 1407-1408.) However, we review determinations of disputed facts for substantial evidence, considering all evidence and reasonable inferences in the light most favorable to the prevailing parties and resolving all conflicts in support of the judgment. (*Concord Christian, supra,* at pp. 1407-1409.)

**B.**

The evidence, viewed in accord with the above principles, is as follows. Since its incorporation in 1964, the Church has been governed by the Mother Church; has conducted itself in accord with the Mother Church's guidance, doctrines, constitution, and bylaws; and has followed its practices, rules, customs and regulations.

Article XII of the Mother Church's constitution addresses the qualifications of local churches. It states: "Each local church shall have the rights of self Government under Jesus Christ, its living head, and shall have the power to choose or call its pastor, or request counsel and supervision of the executive council. It shall elect its own official board and transact all other business pertaining to its life as a local church." Nonetheless, the pastor of any local church "shall have ministerial credential issued by the [Mother Church]," to be renewed annually by the Mother Church. "All ministers holding credentials shall be subject to the Executive Council in matters of conduct and doctrine." Furthermore, " '[t]he local church shall recognize that the general council and the Executive Council [of the Mother Church] have the right [to] approve Scriptural doctrine and conduct; and to disapprove of an un-scriptural doctrine or conduct.' "

The Mother Church's constitution and bylaws contain no provision allowing for an independent church within the ecclesiastical organization. According to Reverend Alan Wendt, a member of the Mother Church's executive council (the council), the Mother Church is "by definition a hierarchical church in which the individual churches are organized as a body with other churches having similar faith and doctrine, and with a common ruling convocation or ecclesiastical head which is vested with ultimate ecclesiastical authority over the individual congregations and members of the entire organized church. If a church leaves the Mother Church and becomes independent, it

3

cannot continue to use the name of the organization, i.e. 'Samoan Congregational Church of Jesus. . . ,' as it is the duly registered property of the [Mother Church], and those persons holding titles conferred by the [Mother Church] General Conference, such as Pastor, Lay Preacher, or Deacon, are stripped of those titles."

In August 2019, Maverick[1] was ordained as a lay preacher at the Mother Church's General Conference in Samoa. Later that year, following the death of the Church's pastor, its lay preachers and a majority of its members asked the Mother Church to send a delegation to Daly City to oversee the election of a new pastor and to explain the Mother Church's laws and guidelines regarding the election. In the interim, senior lay preacher Lefanoga Asoau served as an authorized leader of the Church with the assistance of lay preacher Paulsin Tufono.

Maverick received the most votes at the election and was consecrated on the following day to undertake communion and perform certain other sacraments for the local congregation. However, he was not ordained as pastor. Under the Mother Church's constitution, ordination—even of lay preachers—may only take place at its General Conference in Samoa; indeed, Maverick had been required to travel to Samoa for his ordination as a lay preacher. Accordingly, Mother Church elders instructed him that he could not officially take over Church leadership until his ordination in Samoa, to take place in August 2020. In the interim, he and Audrey were directed to make no major changes, to maintain the Church's status quo, and to cooperate with the Church's other lay preachers.

That did not happen. Maverick began referring to himself as pastor and making changes to the Church's operation, practices, and services, all without consulting the lay preachers

---

[1] Because Maverick and Audrey Tu'ufuli share a common last name, we refer to them by their given names.

or congregation. He and Audrey moved into the pastoral residence against protocol and bylaws, refused demands to move out, changed the locks and those of a second Church property, and chose members for the Church board without input from the Church's lay preachers or membership.

A majority of the Church's members, including all three of its other lay preachers and the former pastor's widow, conveyed serious concerns about these developments to the Mother Church. Around the same time, Maverick wrote the council requesting that the Mother Church officially confirm his status as pastor. The council rejected Maverick's request and reiterated in writing that he would not be certified as pastor until he was ordained in Samoa. Until that time, his status would remain " 'Lay Preacher/Designated Minister.' " The council also repeated its instruction to make no major changes before his ordination.

Maverick nonetheless continued to hold himself out as pastor of the Church. He took control of the Church's bank accounts; filed paperwork with the California Secretary of State claiming to be the Church's "president"; interfered with management of Church property, rental collections, and donations; unilaterally removed existing Church officers; and appointed new directors and officers without membership input, votes, or, in some cases, notice.

After attempts to resolve the differences between the two factions proved fruitless, the council revoked Maverick's appointment as lay preacher and returned Church leadership to senior lay preacher Asoau and the other lay preachers. Lay preachers Asoau, Tufono, and Malaetele L'aulualo and Church secretary Foetuese Maluia (jointly, the lay preachers) wrote to Maverick confirming these actions.

Maverick and his followers did not comply. Purportedly acting as the Church's executive board secretary, Violeta Falo Tiumalu informed the Mother Church that the Church had

5

decided to separate from it and, with Maverick at its helm, continue to operate as the Samoan Congregational Church of Jesus Christ in Daly City.

In a written response, the council observed that numerous Church members had informed it they were not present when the decision was made to leave the Mother Church and were given no voice in it. The council advised Tiumalu that the Mother Church's laws and regulations are binding on its member churches and did not provide for an " 'independent' " church. Furthermore, if the Church became independent it would be forbidden from using the Mother Church's name or its hymns, hymnals, and other intellectual properties, and its lay preachers and deacons would be stripped of their titles and barred from participating in Mother Church conferences, meetings, gatherings, and other forms of international communication.

The lay preachers filed a verified complaint against the Tu'ufulis, naming the Church as nominal defendant. They then moved for a preliminary injunction, seeking principally to remove the Tu'ufulis from any position of authority or control over the Church and its assets and to restore control to Asoau pending trial.

The trial court found the evidence established that the Mother Church is a hierarchical church and, accordingly, applied the ecclesiastical rule of deference to its decision to remove the Tu'ufulis from Church leadership. It further found the lay preachers had established a likelihood of prevailing on the merits and, with the exception of the Tu'ufulis' continued residence in Church housing, that the interim harm to them if injunctive relief were denied outweighed the harm to the Tu'ufulis if it were granted. Accordingly, the court declined to enjoin the Tu'ufulis from occupying the Church residence but otherwise granted the injunction as requested.

6

## DISCUSSION

### A.

The Tu'ufulis contend the trial court erred in deferring to the Mother Church's decision to remove them from Church leadership and control.[2]  In their view, the Church's corporate documents—specifically, its articles of incorporation, bylaws, and constitution—and, to some extent, those of the Mother Church, unambiguously and definitively establish that it is an independent congregational church.  They maintain the court "failed to adequately consider" or outright "disregarded" those documents, choosing instead "only to give weight to the one-sided historical recitation provided by plaintiffs' declarations."

The argument ignores both the record and a basic rule of appellate practice.  First, the trial court *explicitly* considered (and rejected) the Tu'ufulis' position that language in the Church's governing documents proved the Church is strictly independent.  Second, weighed against that language, the court found more compelling the governing documents from the Mother church as well as witness declarations about the churches' relationship, their history, and the parties' actions.  (See *Concord Christian*, *supra*, 132 Cal.App.4th at pp. 1409-1411.)  The Mother Church's constitution and bylaws, notably, describe an international cooperative fellowship of churches, based in Samoa, that generally allows local churches to govern themselves but retains authority over all spiritual teaching and over the ministerial credentials for all pastors.  We may not disturb the trial court's finding.  " 'With rhythmic regularity it is necessary for us to say that where the findings are attacked for insufficiency of the evidence, our power begins and ends with a determination as to whether there is *any* substantial evidence to support them; that

[2] The Tu'ufulis erroneously claim the court deferred to "the individual plaintiffs," rather than to the Mother Church.  It did not.

7

we have no power to judge of the effect or value of the evidence, to weigh the evidence, to consider the credibility of the witnesses, or to resolve conflicts in the evidence or in the reasonable inferences that may be drawn therefrom.' " (9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 365, pp. 423–424, quoting *Overton v. Vita–Food Corp.* (1949) 94 Cal.App.2d 367, 370.)

The Tu'ufulis attempt to reframe this argument in their reply brief, asserting for the first time in this appeal that the court erred in considering extrinsic evidence (by which they apparently mean the Mother Church's governing documents as well as plaintiffs' declarations) to "contradict or vary . . . unambiguous" terms of the Church's governing documents. We do not consider this argument because the Tu'ufulis did not raise it in their opening brief. (*See Garcia v. McCutchen* (1997) 16 Cal.4th 469, 482, fn. 10; *Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 56.) For the same reason, we also deem forfeited the claim in their reply brief that the court erred in applying the ecclesiastic rule of deference "because [the Mother Church] is not even a party to the action." Their further assertion that the lay preachers lack standing is unsupported by legal authority or analysis, and so is also forfeited. (See *In re Tobacco Cases II* (2015) 240 Cal.App.4th 779, 808 (*In re Tobacco Cases*).)

**B.**

We reject the Tu'ufulis' remaining arguments as well.

In evaluating a request for a preliminary injunction, the trial court must evaluate two related factors: the likelihood that the plaintiff will prevail on the merits at trial, and the likely interim harm to the plaintiff without the injunction as compared to the harm to the defendant with it. (*Ryland Mews Homeowners Assn. v. Munoz* (2015) 234 Cal.App.4th 705, 711 (*Ryland Mews*).) On appeal from the grant of an injunction we review the court's legal determinations de novo and its factual findings for substantial evidence, interpreting the evidence in the light most

8

favorable to the plaintiff and indulging in all reasonable inferences in support of the trial court's order. The ultimate decision rests in the trial court's discretion and will not be reversed unless it exceeds the bounds of reason or contravenes uncontradicted evidence. (*Id.* at pp. 711-712.)

Although the Tu'ufulis assert the court failed to adequately evaluate the probability of prevailing at trial and the relative balance of harms, their opening brief gives short shrift to those factors. As to the balance of harms, they simply assert that the court "failed to recognize the extraordinary harm [the Church] has [suffered] and continues to suffer." As to the interim harm to the lay preachers without an injunction, they say nothing. We are not persuaded. In any case, the Tu'ufulis forfeit the issue by failing to cite the record or make a cogent legal argument. (See *In re Tobacco Cases*, *supra,* 240 Cal.App.4th at p. 808.)

The Tu'ufulis' discussion of the likelihood of success at trial is equally lacking. Again without citing the record or providing legal argument, they assert that (1) the lay preachers "failed to submit admissible credible evidence stablishing [*sic*] the likelihood of prevailing on their claims" and (2) the court "appl[ied] the wrong standard." These points are likewise forfeited. (*In re Tobacco Cases, supra,* 240 Cal.App.4th at p. 808.) They further contend the court erred on this point because their then-pending demurrer "presented numerous legal arguments establishing defects in plaintiffs' claims." This point is irrelevant.[3] The court expressly considered the issue and concluded that the Tu'ufulis had not shown the lay preachers could not amend to state a claim for declaratory relief if the demurrer were sustained. (See *Handyspot Co. of Northern California v. Buegeleisen* (1954) 128 Cal.App.2d 191, 194 [court

---

[3] To be clear, the demurrer is not before us and we express no views on its merits. Nor could we, as the Tu'ufulis have not even identified the purported defects.

9

may grant injunction if it appears complaint can be amended to state a cause of action].) The Tu'ufulis identify no error as to that finding.

Next, they claim the trial court improperly "disrupted the status quo" by "stripping [the Church] of its leadership" and "instat[ing] the individual plaintiffs as the church leaders." Although their argument is not entirely clear on this point, its significance apparently lies in the general principle that injunctions compelling a party to perform an affirmative act that changes the status quo are subject to stricter review on appeal than injunctions that prohibit someone from carrying out a particular act. (See *Ryland Mews, supra,* 234 Cal.App.4th at p. 712, fn. 4; *People ex rel. Herrera v. Stender* (2012) 212 Cal.App.4th 614, 630 (*Herrera*).)

The argument is misplaced. Rather than requiring the Tu'ufulis to do some affirmative act, the injunction prohibits them from continuing to occupy Church leadership positions pending trial. (*Cf. Daly v. San Bernardino County Bd. of Supervisors* (2021) 11 Cal.5th 1030, 1045-1050 [order that board of supervisors rescind appointment and seat a replacement supervisor to be appointed by the governor required affirmative act].) We are also unpersuaded that the injunction was mandatory simply because the trial court restored the Church leadership to the lay preachers pending trial. (See *id.* at p. 1046; *id.* at pp. 1044-1045 [prohibitory injunction restores the " ' "last actual peaceable, uncontested status which preceded the pending controversy" ' "].) Given the trial court's findings that the church is, and has always been, hierarchical, it makes more sense to revert temporarily to the leadership of the lay preachers, who recognize the relationship with the Mother Church and have proper ministerial credentials, as opposed to Maverick, who rejected the relationship with the Mother Church and was stripped of his credentials. In any case, even under a stricter

10

standard of review, the Tu'ufulis do not convince us that the preliminary injunction is unlawful or that the trial court should instead have enmeshed itself more deeply in the church's affairs by leaving Maverick in charge but regulating his behavior.

Finally, we reject their claim that the court should have addressed the control of Church assets under civil property law, independently from its analysis of the Church leadership dispute. As a general matter, courts may resolve church property disputes under neutral principles of law applicable to all property disputes. (*Concord Christian, supra,* 132 Cal.App.4th at p. 1411.) Not so, however, where resolution of a property dispute depends on the resolution of a controversy over religious doctrine, practice, or polity requiring judicial deference to ecclesiastical decisions. (*Id.* at pp. 1411-1412.) Here, as explained *ante* in section A of this discussion, the trial court properly deferred to the Mother Church's decision to remove Maverick from his leadership position and, with it, his authority over Church property. (See *Id.* at p. 1411 [rule of deference applies to decisions regarding clergy credentials and church administration].)

## DISPOSITION

The order and preliminary injunction are affirmed. Plaintiffs are entitled to costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (a)(2).)

11

_____

BURNS, J.

We concur:

_____

JACKSON, P.J.

_____

SIMONS, J.

A163904