Filed 6/23/26  P. v. Jaquez CA6
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>OSCAR JAVIER JAQUEZ,<br><br>    Defendant and Appellant. | H053117<br>(Santa Cruz County<br>Super. Ct. No. F16367) |

In 2010, Oscar Javier Jaquez pleaded guilty to four crimes committed when he was 16 years old, and he was sentenced to a total of 58 years in prison. In 2024, asserting that he was serving the functional equivalent of a life without parole (LWOP) sentence, Jaquez petitioned for resentencing under Penal Code section 1170, subdivision (d) (Section 1170(d)). (Subsequent undesignated statutory references are to the Penal Code.) The district attorney opposed, and the trial court denied the petition, ruling that resentencing under Section 1170(d) was barred by Jaquez's plea agreement and by the availability of youthful offender parole.

Jaquez now appeals, and the Attorney General concedes that the trial court erred in denying Jaquez resentencing under Section 1170(d). As explained below, we accept the concession that the trial court erred in denying resentencing because of Jaquez's plea agreement and because Section 1170(d) authorizes resentencing for de facto LWOP sentences regardless of the availability of youthful offender parole. However, we remand

to the trial court to consider in the first instance whether, apart from the availability of youthful offender parole, Jacquez received a de facto LWOP sentence.

## I. BACKGROUND

### A. The Underlying Offenses

Jaquez was born in 1991 and later became a Norteño gang member. According to the representation of the prosecution at the plea hearing, which Jaquez admitted, in January 2008 Jaquez and another Norteño gang member challenged A.F., who appeared to be a member of the rival Sureño gang, to a fight. When A.F. drove behind a gas station, where the fight was to take place, Jaquez began to pull out a revolver. However, apparently seeing the gun, A.F. drove away.

Soon afterwards, Jaquez encountered Servando Silonsochilt, a Sureño gang member, and once again pulled out his gun. Jaquez then shot Silonsochilt in the arm. Silonsochilt turned around and began to run, but Jaquez shot him twice in the abdomen, and Silonsochilt staggered into oncoming traffic and was killed.

Jaquez was subsequently apprehended with a revolver, which matched the bullets found at the crime scene. Police also recovered documents in Jaquez's handwriting expressing the desire to kill Soreño gang members with the revolver used to shoot Silonsochilt in order to benefit the Norteño gang.

### B. The Charges and Plea Agreement

In February 2008, a complaint charged Jaquez with murdering Silonsochilt (§ 187, subd. (a); count 1) and two misdemeanors: exhibiting a firearm (§ 417, subd. (a)(2); count 2) and disturbing the peace by fighting (§ 415, subd. (1); count 3). In connection with the murder charge, the complaint also alleged personal use of a firearm (§ 12022.53, subds. (b)-(d)).

In May 2010, Jaquez entered into a plea agreement. The district attorney filed an amended information charging Jaquez with one count of voluntary manslaughter for killing Silonsochilt (§ 192, subd. (a); count 1), one count of attempted murder of A.F.

2

(§§ 187, subd. (a), 664; count 2), two counts of attempted murder of Silonsochilt (§§ 187, subd. (a), 664; counts 3 and 4), and one count of conspiracy to commit assault with a deadly weapon (§§ 182, subd. (a)(1), 245, subd. (a)(1); count 5).  In connection with each count, the amended information alleged personal use of a firearm (§§ 1192.7, 12022.5, subds. (a), (d)) and committing offenses for the benefit of a street gang (§ 186.22, subd. (b)(1)).

On the same day that the amended information was filed, Jaquez pleaded guilty to all the counts and allegations in the amended information.  In so doing, Jaquez understood that his sentence "will be no more than 58 years."  He also agreed to waivers of both appeal and collateral attack.

## C. The Sentence

In June 2010, Jaquez was sentenced.  The trial court imposed a total sentence of 58 years in prison.  On the voluntary manslaughter count, the trial court imposed the upper term of 11 years as well as 10 years each for the firearm and gang enhancements, for a total of 31 years on this count.  For the three attempted murder counts, the trial court imposed one-third of the seven year middle term (two years four months) for the offense itself and for one-third of 10 years (three years four months) each for the firearm and gang enhancements, for a total of nine years for each of the three counts.  Finally, the trial court dismissed the conspiracy count.

## D. Jaquez's Parole and Resentencing Requests

In July 2023, Jaquez had a parole hearing under section 3051, which makes defenders under 25 years of age at the time of an offense, and those under 18 years old receiving LWOP sentences, eligible for parole after 15, 20, or 25 years.  (§ 3051, subds. (b)(1)-(4).)  Jaquez was denied parole, but another parole hearing is tentatively scheduled for July 2028.

In April 2024, Jaquez petitioned for rehearing under Section 1170(d).  Relying on *People v. Heard* (2022) 83 Cal.App.5th 608 (*Heard*), Jaquez argued Section 1170(d)

3

violates equal protection to the extent that it does not permit resentencing of juvenile offenders serving de facto LWOP sentences. Jaquez also argued that he was eligible for resentencing under Section 1170(d) because he was serving a de facto LWOP sentence, he was under 18 at the time of the offenses, he had been incarcerated for 15 years, and he was not convicted of a disqualifying offense. In addition, Jaquez filed a statement describing his remorse and contended that he satisfied the requirements for resentencing because he had no prior felony adjudications for assault or other crime involving a significant potential for personal harm, his crime was committed with an adult co-defendant, and he had demonstrated potential for rehabilitation. In particular, Jaquez presented evidence that he dropped out of the Norteño gang, obtained his high school diploma, took vocational classes, and enrolled in narcotics and alcoholics anonymous.

The district attorney opposed resentencing. He argued that Jaquez's waiver of the right to collaterally attack his plea barred resentencing, that there was no authority for applying Section 1170(d) to determinate sentences, and that Jaquez was not sentenced to a de facto LWOP sentence.

The trial court denied the petition for resentencing, though not on the grounds urged by the district attorney. The court declined to consider whether the collateral attack waiver barred resentencing. However, it held that section 1171, a statute not mentioned by either party, barred resentencing. The trial court reasoned that, because the plea agreement had reached "a fair and just result with a stipulated sentence," Jaquez could not be resentenced without rescinding the agreement and that section 1171 forbids resentencing that rescinds a plea agreement. In addition, after observing that no prior cases have held equal protection requires resentencing of determinate sentences, the trial court ruled that Jaquez was not sentenced to a de facto LWOP sentence because he is eligible for a youthful parole under section 3051.

4

## II. DISCUSSION

Jaquez argues that section 1171 does not bar resentencing because, contrary to the trial court's assumption, his plea agreement did not contain a stipulated sentence and that equal protection requires resentencing under Section 1170(d) for juvenile offenders with de facto LWOP sentences, whether or not youthful offender parole is available. In response, the Attorney General concedes that section 1171 does not bar resentencing and that equal protection requires resentencing under Section 1170(d) for de facto LWOP sentences without regard to the availability of youthful offender parole.

After the briefing in this case was complete, in light of the Attorney General's interpretation of Section 1170(d) in the briefing submitted to the Supreme Court in *People v. Munoz*, No. S290828, we requested supplemental briefing on whether Section 1170(d) should be interpreted to apply to de facto LWOP sentences. In response, both parties agreed that Section 1170(d) should be interpreted to do so.

As explained below, we agree that section 1171 does not bar resentencing, that Section 1170(d) should be interpreted to permit resentencing of juvenile offenders with de facto LWOP sentences, and that under Section 1170(d) the availability of youthful offender parole does not affect whether an LWOP sentence has been imposed. However, before considering these issues, we address an issue not reached by the trial court: whether the collateral attack waiver in Jaquez's plea agreement bars resentencing.

### A. The Collateral Attack Waiver

In his plea agreement, Jaquez agreed to "waive any and all appellate rights" and "[w]aive collateral attacks." In light of this waiver the district attorney argued below that Jaquez relinquished the right to collaterally attack his sentence by petitioning for resentencing under Section 1170(d). However, the trial court did not reach this argument, and the Attorney General has declined to advance it on appeal, reasoning that a waiver reaching resentencing under Section 1170(d) would violate public policy. We agree with the Attorney General.

5

Since the Legislature enacted section 1016.8 in 2019 (Stats. 2019, ch. 568, § 1), plea bargains that waive benefits subsequently conferred by future legislation are void as against public policy:  "A provision of a plea bargain that requires a defendant to generally waive future benefits of legislative enactments, initiatives, appellate decisions, or other changes in the law that may retroactively apply after the date of the plea is void as against public policy."  (§ 1016.8, subd. (b).)  The Legislature added Section 1170(d) in September 2012 in Senate Bill No. 9 (2011-2012 Reg. Sess).  (Stats. 2012, ch. 828, § 1.)  Jaquez entered into his plea agreement and pleaded guilty in May 2010, more than two years before the enactment of Section 1170(d).  As a consequence, if the appellate and collateral attack waiver in Jaquez's plea bargain sought to waive the benefits later conferred by resentencing under Section 1170(d), the waiver is now void as against public policy.

## B.  Section 1171

Apparently sua sponte, the trial court ruled that section 1171 bars resentencing of Jaquez, reasoning that his plea agreement stipulated to a 58 year sentence, which cannot be reduced without rescinding the bargain.  Jaquez argues that the trial court erred because, in fact, he did not agree to a stipulated sentence.  The Attorney General agrees that the trial court erred for a different reason:  Section 1171 does not bar resentencing from modifying plea agreements.  Both are correct.

First, in his plea agreement Jaquez did not agree to a stipulated sentence.  In explaining the agreement, the prosecutor initially stated that Jacquez "is going to be sentenced to 58 years," but then corrected himself and said that "as part of that agreement, it will be no more than 58 years" and "can be less."  When the trial court accepted the plea agreement, it understood that the agreement imposed a "lid" rather than a stipulated sentence:  In summarizing the terms of the agreement, the court stated that "the charges will reach *a maximum of 58 years*," not that Jaquez would be sentenced to such a term.  Thus, to the extent that the trial court's ruling that section 1171 precluded

6

resentencing was based on the premise that Jaquez had agreed to a stipulated sentence, the premise was false.

Second, as the Attorney General recognizes, section 1171 does not bar modification of plea agreements in resentencing. To the contrary, the section expressly authorizes modification "after a plea": It states that, absent a more specific statutory rule, in a postconviction proceeding to modify a sentence pursuant to an ameliorative statute "[t]he court . . . has jurisdiction to modify every aspect of the defendant's sentence, including if it was imposed after a guilty plea." (§ 1171, subd. (c)(2); see also *id*., § 1171, subd. (a).) The statute then provides that a plea bargain may not be rescinded based upon such modification: "Any change to a sentence shall not be basis for a prosecutor or court to rescind a plea agreement." (*Id*., § 1171, subd. (c)(3).) Thus, section 1171 expressly authorizes trial courts to modify sentences imposed after a plea bargain and prohibits rescission of bargains based on such modification.

Accordingly, we conclude that the trial court erred in ruling that section 1171 barred resentencing because of Jaquez's plea agreement.

## C. De Facto LWOP Sentences

Under section 190.5, a juvenile offender may be sentenced to "confinement in the state prison for life without possibility of parole" for committing murder in the first degree with one or more special circumstances. (§ 190.5, subd. (b).) Although Jaquez was not convicted of murder in the first degree and did not receive a formal LWOP sentence under section 190.5, he contends that the 58-year aggregate sentence that he received is a de facto LWOP sentence, and therefore he is entitled to resentencing under Section 1170(d), which, under certain circumstances, provides for resentencing of juvenile offenders with LWOP sentences. (§ 1170, subd. (d)(5).) In the trial court, Jaquez based this contention on precedent holding that Section 1170(d) violates equal protection by not permitting resentencing of juvenile offenders with de facto LWOP sentences. We need not consider the constitutionality of Section 1170(d) because we

7

agree with the position taken by the parties in their supplemental briefs: namely, that Section 1170(d) should be construed to apply to de facto LWOP sentences.

Section 1170(d) provides that, subject to certain restrictions, juvenile offenders sentenced to "imprisonment for life without the possibility of parole" may petition for recall and resentencing. (§ 1170, subd. (d)(1)(A); see also *ibid*. [requiring incarceration for at least 15 years]; *id*., § 1170, subd. (d)(2)(B) [prohibiting resentencing where the victim was tortured or the victim was a public safety official, a firefighter, or a state, federal, or local law enforcement officer]; *id*., § 1170, subds. (d)(2), (5) [requiring certain circumstances].) A defendant with a formal LWOP sentence under section 190.5 plainly has been sentenced to "imprisonment for life without possibility of parole" for purposes of Section 1170(d). However, Section 1170(d) does not refer to section 190.5 or any other statutory provision imposing LWOP sentences. As a consequence, its use of the term "imprisonment for life without possibility of parole" is also reasonably understood to include individuals who have been sentenced to a term that, as a practical matter, precludes them from obtaining parole—that is, a de facto LWOP.

This practical interpretation is supported by the legislative history of Section 1170(d), which, as noted above, was enacted in September 2012 in Senate Bill No. 9 (2011-2012 Reg. Sess). (Stats. 2012, ch. 828, § 1.) In reviewing case law concerning LWOP sentences, the bill's author quoted a decision holding that, for Eighth Amendment purposes, a defendant had received " 'a de facto LWOP sentence because he is not eligible for parole until about the time he is expected to die.' " (Assem. Com. on Public Safety, Analysis of Sen. Bill No. 9 (2011-2012 Reg. Sess.) as amended May 27, 2011, p. 10, quoting *People v. J.I.A.* (2011) 127 Cal.Rptr.3d 141, 149, vacated and remanded Oct. 12, 2012, S14841).) Thus, the Legislature appears to have intended Section 1170(d) to be interpreted in a practical rather than technical manner to apply not only to formal LWOP sentences but also to de facto LWOP sentences that effectively render a juvenile offender ineligible for parole before they are expected to die.

A practical interpretation of Section 1170(d) is also supported by constitutional considerations. At least four Court of Appeal decisions have held that restricting resentencing under Section 1170(d) to juvenile offenders with formal LWOP sentences is irrational and violates equal protection. (*People v. Cabrera* (2025) 111 Cal.App.5th 650, 653; *People v. Sorto* (2024) 104 Cal.App.5th 435, 450-454 (*Sorto*); *People v. Bagsby* (2024) 106 Cal.App.5th 1040, 1054-1061 (*Bagsby*); *Heard*, *supra*, 83 Cal.App.5th at pp. 631-634.) Other Court of Appeal decisions have disagreed. (*People v. Baldwin* (2025) 113 Cal.App.5th 978, 1002-1006; *People v. Thompson* (2025) 112 Cal.App.5th 1058, 1075-1081, review granted Sept. 24, 2025, S292540.) Nonetheless, interpreting Section 1170(d) to be limited to formal LWOP sentences plainly raises a serious constitutional question, and it is well-established that statutes should be construed to avoid constitutional questions where they are reasonably susceptible to a reasonable alternative interpretation that do not raise such questions. (See, e.g., *People v. Superior Court* (*Guevara*) (2025) 18 Cal.5th 838, 862 [" ' "If a statute is susceptible of two constructions, one of which will . . . raise serious and doubtful constitutional questions, the court will adopt the construction which, without doing violence to the reasonable meaning of the language used, will render it . . . free from doubt as to its constitutionality." ' "]; *People v. Miracle* (2018) 6 Cal.5th 318, 339 [" '[A] statute must be construed, if reasonably possible, in a manner that avoids a serious constitutional question.' "].)

Accordingly, we conclude that Section 1170(d) should be interpreted to apply to de facto as well as formal LWOP sentences.

### D. Youthful Offender Parole

The trial court held that Jaquez was not serving a de facto LWOP sentence because he is eligible for youthful offender parole under section 3051 and, in fact, already has received a youthful offender parole hearing. We disagree. Youthful offender parole is available to all juvenile offenders with LWOP sentences, whether formal or not. (§ 3051,

9

subd. b)(4).)  Moreover, the Legislature extended youthful offender parole hearings to juvenile offenders with LWOP sentences in 2017, five years after enacting Section 1170(d).  (Stats. 2017, ch. 684, § 1.5; see *People v. Hardin* (2024) 15 Cal.5th 834, 845.)  In so doing, the Legislature did not indicate that it intended to end resentencing for juvenile offenders with LWOP sentences under Section 1170(d), and, as the Supreme Court has long recognized, "[a]bsent an express declaration of legislative intent, we will find an implied repeal 'only when there is no rational basis for harmonizing the two potentially conflicting statutes.' "  (*Garris v. McCutchen* (1997) 16 Cal.4th 469, 477.)  Accordingly, in determining whether an individual was sentenced to "imprisonment for life without the possibility of parole" under Section 1170(d), youthful offender parole should be disregarded.  (*Sorto*, *supra*, 104 Cal.App5th at pp. 447-448; *Bagsby*, *supra*, 106 Cal.App.5th at p. 1061; *Heard*, *supra*, 83 Cal.App.5th at pp. 628-629.)

However, because the trial court did not consider whether, despite the availability of youthful offender parole, Jaquez's determinate sentence is a de facto LWOP sentence, we leave that issue for the trial court to consider in the first instance.

### III.  DISPOSITION

The order of March 17, 2025 denying appellant's petition for resentencing is reversed, and this matter is remanded to the trial court for further proceedings consistent with this opinion.

                                             _____

                                             BROMBERG, J.

I CONCUR:

_____
GREENWOOD, P. J.

*People v. Jaquez*
H053117

DANNER, J.

I respectfully dissent.  For the reasons explained by the majority, I agree that the trial court erred in concluding that Penal Code section 1171   barred resentencing here. Nevertheless, we review the court's ruling, not its reasoning.  If correct on any ground, we affirm.  (*People v. Camacho* (2022) 14 Cal.5th 77, 123.)

I believe the reference to "imprisonment for life without the possibility of parole" in section 1170, subdivision (d)(1)(A) should, as a matter of text and legislative intent, be read literally.  (*People v. Heard* (2022) 83 Cal.App.5th 608, 622–626; *People v. Ortega* (2025) 111 Cal.App.5th 1252, 1263.)  I further conclude that Jaquez has not carried his burden of demonstrating that constitutional considerations dictate an expanded reading of section 1170, subdivision (d)(1)(A).  (See *People v. Thompson* (2025) 112 Cal.App.5th 1058, 1081, review granted Sept. 24, 2025, S292540.)  As Jaquez is ineligible for relief under section 1170, subdivision (d), I would affirm the trial court's order.


_____
            Danner, J.